Phillip Earl LYDIA, Appellant,

v.

The STATE of Texas.

No. 1488–02.

Court of Criminal Appeals of Texas.

July 2, 2003.

---

10. *Id.,* at 212–13 (footnotes omitted).

William H. "Bill" Ray, Fort Worth, for Appellant.

Michael R. Casillas, Asst. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, WOMACK, JOHNSON, HOLCOMB, and COCHRAN, JJ., joined.

The appellant, Phillip Earl Lydia, was found guilty of aggravated robbery causing bodily injury to a disabled person. The jury sentenced him to eighteen years' imprisonment. The Court of Appeals affirmed his conviction. *Lydia v. State*, 81 S.W.3d 486 (Tex.App.-Fort Worth 2002). We granted the appellant's petition for discretionary review to determine whether the State improperly attempted to bind prospective jurors to specific factual situations during the voir dire examination, contrary to this court's decision in *Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App. 2001).

### Background

The prosecutor asked venire members the following question during voir dire in the appellant's trial: "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" The appellant objected, arguing that the question attempted to improperly bind the jurors. The trial court overruled the objection and permitted the prosecutor to ask the question, but it granted the appellant a running objection to that particular question. The prosecutor went row by row through the panel and continued to ask the same question. The prosecutor individually questioned the prospective ju-

rors who indicated that they might have some concern with testimony from witnesses with criminal backgrounds.[1]

During its inquiry with a particular juror, the prosecutor modified the factual circumstances of this question and asked whether the juror could remain impartial if the victim's past crimes were against the defendant on trial.[2] The appellant objected again, the question was permitted, and the trial court granted the appellant a running objection to that question. Two of the venire members who gave specific responses to the contested questions were empaneled on the jury that decided the appellant's case. The appellant made no objection to the placement of those individuals on the jury.

The appellant raised a single point of error on direct appeal: he claimed that the trial court erred in permitting the prosecutor to ask improper commitment questions of the venire panel, contrary to this Court's decision in *Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App.2001), which was handed down while the appellant's case was pending on direct appeal. The Court of Appeals held that *Standefer* should apply retroactively to all cases pending on direct appeal or not yet final when the decision was handed down. *Lydia v. State*, 81 S.W.3d at 492.[3] Then, in applying *Standefer* to the facts of the present case, the Court determined that the questions asked were not commitment questions because they did not ask the prospective jurors to resolve or refrain

from resolving any issues. *Ibid.* Instead, the Court concluded that the questions asked prospective jurors only whether they could impartially evaluate testimony. *Ibid.* Therefore, the Court did not address whether the questions met the remaining prongs of the *Standefer* test, nor did it conduct a harm analysis. *Ibid.*

### Legal Background

 The Court of Appeals noted that the prohibition on commitment questions is a well-established aspect of Texas criminal practice. *Lydia*, 81 S.W.3d at 489. Indeed, the general rule is that an attorney cannot attempt to bind or commit a venire member to a verdict based on a hypothetical set of facts. *Allridge v. State*, 850 S.W.2d 471, 480 (Tex.Crim.App.1991). Questions that commit prospective jurors to a position, using a hypothetical or otherwise, are improper and serve no purpose other than to commit the jury to a specific set of facts before the presentation of any evidence at trial. *Atkins v. State*, 951 S.W.2d 787, 789 (Tex.Crim.App.1997).

 In *Standefer*, we articulated a test for determining when a voir dire question calls for an improper commitment. The test has two steps: (1) Is the question a commitment question, and (2) Does the question include only those facts that lead to a valid challenge for cause? *Standefer*, 59 S.W.3d at 182. If the answer to the first question is "yes" and the answer to the second question is "no," then the ques-

---

1. Other questions include: "Do each of you feel as though you hold [criminal activity in the past] against a witness or otherwise not listen to what the witness is saying?"; "Captain Hook may have done some things in the past that are just as bad or worse. Does that change the fact that he was stolen from?"; "And what kind of conviction would cause you to have a bias?"

2. The record is somewhat ambiguous as to the precise question asked by the prosecutor.

3. We need not decide whether *Standefer* applies retroactively as the State claims because an attempt to commit prospective jurors was deemed improper long before *Standefer* was handed down. *See Allridge v. State*, 850 S.W.2d 471, 480 (Tex.Crim.App.1991).

tion asked is an improper commitment question. *Id.* at 182–183.

■ Commitment questions "commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." Id. at 179. These types of questions tend to require a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way. *Ibid.* These questions can also ask the venire person to refrain from resolving an issue on the basis of a fact that may be used to resolve the issue, for example, the party could attempt to secure a commitment to refrain from resolving the punishment issues in a capital case on the basis of victim impact evidence. *Ibid.* Commitment questions include those questions that ask a prospective juror to set the hypothetical parameters for his or her own decision-making. *Id.* at 180. For example, the following question is a commitment question asking the venire person to explain the parameters of his decision-making: "What circumstances in your opinion warrant the imposition of the death penalty?" *Ibid.* Also, commitment questions may contain words such as "consider," "would," and "could." *Ibid.; Id.* at n. 9.

■ A commitment question can be proper or improper, depending on whether the question leads to a valid challenge for cause. *Id.* at 181. Commitment questions are improper when (1) the law does not require a commitment or (2) when the question adds facts beyond those necessary to establish a challenge for cause. *Id.* at 181–182. When the law requires certain types of commitments from jurors, attorneys may ask the prospective jurors whether they can follow the law in that regard. *Id.* at 181. For example, one could ask prospective jurors whether they could follow a law that required them to:

disregard illegally obtained evidence; follow instructions requiring corroboration of accomplice witness testimony; consider the full range of punishment available, or follow a law that precludes them from holding against defendant his failure to testify. *Ibid.*

### Application

■ The Court of Appeals held that the questions asked by the State were not commitment questions because the questions did not ask the venire members to resolve or to refrain from resolving any issue. *Lydia* 81 S.W.3d at 492. Rather, the questions asked jurors only to impartially evaluate testimony. *Ibid.*

The appellant argues that the prosecutor wanted to know whether the jurors could believe a victim and determine if he was telling the truth without automatically dismissing his testimony because of some prior criminal history. Thus, the questions asked by the prosecutor committed prospective jurors to resolve or refrain from resolving an issue a certain way after learning a particular fact. The appellant further argues that these types of questions serve only to introduce the facts of the case before prospective jurors, and eliminates those who will not vote guilty based on that fact.

The State argues that the Court of Appeals is "in effect correct regarding whether the complained-of *voir dire* inquiries even constitute 'commitment questions' under *Standefer's* definition thereof." However, it then proceeds to contradict the analysis of the Court of Appeals. According to the State, the questions that the appellant complains about sought to bind the potential jurors to refrain from prejudging the potential victim-witness's credibility based on his own potential criminal history. The prosecutor tried to learn whether any of the potential jurors would

not impartially judge the credibility of the witness or hold extreme or absolute positions regarding credibility. In addition, the State provides no independent arguments for why the questions at issue are or are not commitment questions. Instead, it argues that regardless of the answer to that question, the inquiries made were entirely proper because a prospective juror may be properly challenged for cause and removed from the venire panel if he cannot impartially judge the credibility of the witnesses. The State acknowledges that under *Standefer* the proper inquiry is whether the question attempts to commit a potential juror to resolve or refrain from resolving an issue a certain way depending on a fact supplied, or if it asks the potential juror to set hypothetical parameters for decision-making.

The prosecutor asked of the entire panel, "Do each of you feel as though you could evaluate a witness and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" This question, in various forms, was repeated to members of the panel on a group and individual basis. Expanding upon this hypothetical, the prosecutor asked the panel if it would make a difference if the crime committed by the witness was against the defendant. Also, the prosecutor asked one of the jurors "what kind of conviction would cause you to have a bias?" The first question is a commitment question: it asks jurors to resolve witness credibility (issue) based on the knowledge that the witness has a criminal history (particu-

lar fact). The second question is a commitment question: it asks jurors to resolve witness credibility (issue) based on the knowledge that the witness committed a crime against the defendant on trial (particular fact). The third question asks the juror to define the parameters of his decision making—to define those crimes that will make a difference in his assessment of the witness' credibility.

Contrary to the opinion of the court below, these questions *do* ask jurors to resolve issues concerning witness credibility on the basis of particular facts. The prosecutor did not ask whether the venire members could impartially evaluate testimony. Instead, she asked the jurors to discuss how they would resolve the credibility of a witness based on a particular fact about that witness.

The questions asked by the State were commitment questions.[4] They asked whether the prospective juror would resolve the issue of witness credibility based on a particular fact—the witness' criminal history. *See Standefer*, 59 S.W.3d at 183. More specifically, the questions sought to determine whether a witness would automatically dismiss a witness's testimony because of a particular fact about the witness. The Court of Appeals reasoned that the questions did not ask the jurors to resolve the victim's testimony in any given way in light of the additional fact. *Lydia*, 81 S.W.3d at 492. We disagree and hold that the State asked commitment questions of the venire.

4. At the outset of its opinion, the Court of Appeals noted the following: "The general rule has been that it is improper to ask a commitment question during voir dire because it would amount to an improper attempt to bind a juror. This prohibition against a question that binds a juror to a particular conclusion clashes with the ability of the parties to effectively challenge for cause

those jurors who cannot impartially judge the credibility of witnesses." *Lydia*, 81 S.W.3d at 489 (internal citations omitted). It is difficult to discern how the prohibition against a question that binds a juror could "clash" if it is not even in the category of commitment questions. The Court of Appeals failed to address this discrepancy between the beginning and end of its opinion.

**Conclusion**

We conclude that the Court of Appeals erred in holding that the questions asked by the prosecutor were not commitment questions, and we vacate and remand for further analysis under the remaining prongs of the test for improper commitment questions promulgated in *Standefer*.

KEASLER and HERVEY, JJ., concurred in the judgement.