Cooper Alan Rounsavall v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-328-CR

     COOPER ALAN ROUNSAVALL,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2002-244-C
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      After a jury trial, Cooper Alan Rounsavall was convicted of aggravated assault with a deadly
weapon. He pled “true” to two enhancement paragraphs, and the court sentenced him to thirty
years’ confinement in the Texas Department of Criminal Justice—Institutional Division, in
accordance with the jury’s assessment. On appeal, he charges that his trial counsel rendered
ineffective assistance at both the guilt-innocence phase and the punishment phase. Because
Rounsavall has not shown that his attorney provided ineffective assistance, we will affirm the
judgment.
BACKGROUND
      On Sunday, January 20, 2002, Rounsavall stabbed Benjamin Wong. At trial, Wong testified
that Rounsavall had come to his home twice that afternoon looking for someone named “Laurie.” 
The first time Rounsavall came to Wong’s home, he advised Rounsavall that no “Laurie” was
present. Wong testified that the second time Rounsavall came to the house, Rounsavall tried to
force his way in, and Wong used physical force to keep him out. The men fought on the porch
and in the yard, and Rounsavall stabbed Wong with a steak knife Rounsavall had with him.
      Rounsavall, on the other hand, told the jury a different story. He said that on his first visit
to the house, Wong sold him less than a gram of cocaine.


 Rounsavall said that he returned home,
used the cocaine, and began hallucinating. Then, Rounsavall bicycled back to Wong’s house to
complain about the cocaine, which he believed had been cut with strychnine.
      Rounsavall said that, while he was on the porch talking to Wong, he heard a familiar voice
invite him inside the house. According to Rounsavall, Wong started the fight by striking him in
the chest and kicking him as he attempted to flee. In particular, Rounsavall said that Wong kicked
him in the groin and struck him with a half-inch pipe as he attempted to get up. Rounsavall then
pulled his knife, which Rounsavall says he had been using earlier in the day to sharpen pencils for
an art project. He brandished the knife as he tried to get away from Wong. At that point, Wong
tried to strike his head with the pipe. Rounsavall testified that he ducked—to avoid a crushing
blow from the pipe—stabbing Wong in the process. Rounsavall then left on his bicycle, which
was later found in a garage behind his house.
ISSUES PRESENTED
      In two issues, Rounsavall complains that his trial attorney’s assistance was ineffective at both
the guilt-innocence phase and the punishment phase. First, he alleges the following deficiencies
in the guilt-innocence phase.
      •    Counsel failed to object during voir dire to the State’s attempt to bind prospective jurors
to a specific factual situation.
 
      •    Counsel failed to respond to the State’s hearsay objection to Rounsavall’s testimony,
which Rounsavall believes should have been allowed for impeachment.
 
      •    Counsel failed to object to the admission of Rounsavall’s 1990 burglary conviction and
1996 possession of cocaine conviction because the prejudicial effect of such evidence
outweighed its probative value.
 
      •    Counsel failed to object to the admission of misdemeanor convictions not involving
“moral turpitude.”
 
      •    Counsel failed to request a limiting instruction that Rounsavall’s prior convictions could
be considered only for the purposes of impeachment.
 
      •    Counsel failed to object to an erroneous written response by the trial court to a written
question from the jury.

Second, he alleges that counsel rendered ineffective assistance at the punishment phase by not
objecting to the State’s failure to properly connect Rounsavall to seven prior convictions. 
INEFFECTIVE ASSISTANCE OF COUNSEL
      A conviction had with the attorney rendering ineffective assistance is constitutionally infirm. 
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Ex parte
Dietzman, 851 S.W.2d 304, 305 (Tex. Crim. App. 1993).
      To prevail on a claim of ineffective assistance of counsel, Rounsavall must meet the two-pronged test used to analyze claims of ineffective assistance of counsel. See Strickland, 466 U.S.
at 690, 104 S.Ct. at 2066; Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First,
he must show that his trial counsel's performance was so deficient, because he made errors of such
a serious nature, that his assistance fell below an objective standard of reasonableness. Thompson,
9 S.W.3d at 812. Second, assuming he can demonstrate deficient assistance, he must affirmatively
prove prejudice. Id. He must show a reasonable probability that, but for his counsel's
unprofessional errors, the result of the proceeding would have been different. Id. A reasonable
probability is a probability sufficient to undermine confidence in the outcome. Id. He bears the
burden of proving by a preponderance of the evidence that counsel was ineffective. Id. at 813.
      The assessment of whether a defendant received effective assistance of counsel must be made
according to the facts of each case. Id. An allegation of ineffectiveness must be firmly founded
in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. Id. In
other words, when the record is silent as to defense counsel’s subjective motivations, courts will
ordinarily presume that the challenged action might be considered sound trial strategy. Rylander
v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Failure to make the required showing
of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. 
Thompson, 9 S.W.3d at 813.
      There is a strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Stated
another way: Counsel's competence is presumed and the party asserting ineffective assistance must
rebut this presumption by proving that his attorney's representation was unreasonable under
prevailing professional norms and that the challenged action was not sound trial strategy. Avila
v. State, 2003 WL 21513440,*10 (Tex. Crim. App. July 2, 2003). The fact that another attorney
might have pursued a different course of action or tried the case differently will not support a
finding of ineffective assistance of counsel. Id.
      The Strickland standard applies to all claims of ineffective assistance of counsel whether
arising from guilt-innocence or punishment. Hernandez v. State, 988 S.W.2d 770, 772-73 (Tex.
Crim. App. 1999) (overruling Ex parte Duffy, 607 S.W.2d 507 (Tex. Crim. App. 1980), which
applied a different standard to claims of ineffective assistance of counsel at the punishment phase).
      With these standards in mind, we turn to the specific assertions of counsel's ineptitude.
VOIR DIRE
      Rounsavall first argues that counsel should have objected during voir dire to the State’s
attempt to bind prospective jurors to a specific factual situation. He contends that the State
improperly attempted to commit three jurors to the position that Wong would be justified in using
force if Rounsavall attempted to enter Wong’s house “for whatever reason.”
STATE:      What if, let’s just say that this person that you know by name has come to you in the
day and knocked on your door, and when you answer the door and converse that
individual attempts to force her way into your house. Are they an invited guest in
your house at that time? (Emphasis added).
 
UNIDENTIFIED JUROR:     No, they are not invited.
 
 STATE:      Mr. Weinberger, what are you going to do if somebody tries to force their way into
your house?
 
WEINBERGER: I am going to try to stop them, try to close the door on them.
 
STATE:      Let’s assume that maybe you are outside the door, you are going to try to stop them
as you said in the first place, right?
 
WEINBERGER: Yes.
 
STATE:      Sometimes maybe you can’t use the door as keeping them out, but you are going to
do what you can to keep them from going into your house. Mr. Naumann?
 
NAUMANN:     Yes.
 
STATE:      Mr. Naumann, would that feeling of making your house secure be greater if you had
loved ones inside?
 
NAUMANN:     Absolutely.

      We disagree with Rounsavall’s interpretation of this line of questioning. We read the
transcript to indicate that Naumann and Weinberger believed that force may be proper to keep out
an uninvited guest. But Rounsavall’s defense relied on the jury accepting his version of what
happened, i.e., that someone invited him in. We do not believe that these questions bound any
prospective juror to a verdict based on a hypothetical set of facts. See Lydia v. State, 2003 WL
21509140, *2 (Tex. Crim. App. July 2, 2003); Standefer v. State, 59 S.W.3d 177, 179 (Tex.
Crim. App. 2001) (citing Allridge v. State, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991)). 
Therefore, we find that Rounsavall has not shown that his attorney’s failure to object to these voir
dire questions “fell below an objective standard of reasonableness.” Thompson, 9 S.W.3d at 812.
PRIOR CONVICTIONS & LIMITING INSTRUCTIONS
      In three sub-issues, Rounsavall contends trial counsel was ineffective: (1) for failing to object
to the admission of his 1990 burglary conviction and his 1996 possession of cocaine conviction,
(2) for failing to object to the admission of several misdemeanor convictions for crimes not
involving moral turpitude, and (3) for failing to request a limiting instruction that his prior
convictions could be considered only for the purposes of impeachment. With regard to these
allegations, the record is not sufficiently developed to enable Rounsavall to overcome the
presumption of effective assistance of counsel. Avila, at *10 (“Under most circumstances the
record on direct appeal will not be sufficient to show that counsel’s representation was so deficient
and so lacking in tactical or strategic decision-making as to overcome the strong presumption that
counsel’s conduct was reasonable and professional.”); see also Rylander, 101 S.W.3d at 110–11;
Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). “A reviewing court can frequently
speculate on both sides of an issue, but ineffective assistance claims are not built on retrospective
speculation; rather, they must be ‘firmly founded in the record.’” Avila, at *10 (quoting Bone,
77 S.W.3d at 833). In this case, we can only speculate about why counsel behaved as alleged. 
Such speculation is beyond our purview. Avila, at *10.
HEARSAY OBJECTION, JURY QUESTION; PUNISHMENT PHASE
      We will discuss the three remaining allegations of ineffectiveness together, because we find,
in each instance, Rounsavall has not satisfied the second prong of Strickland, i.e., that the results
of the proceeding would have been different. See Strickland, 466 U.S. at 690, 104 S.Ct. at 2066;
Thompson, 9 S.W.3d at 812.
Hearsay Objection
      Rounsavall alleges that his trial counsel was deficient for failing to respond to the State’s
hearsay objection to his testimony that Wong offered to sell him cocaine.
ROUNSAVALL:      [Wong] said, what else is up, and I said, what do you mean, and he said,
are you looking for anything.
 
DEFENSE ATTORNEY:       What does that mean, are you looking for anything?
 
ROUNSAVALL:      It means, are you looking for anything, and I said, what have you got, and
he said well, I have got some coke.

The court sustained the State’s hearsay objection and instructed the jury to disregard the last
statement for any purpose. The court sustained another hearsay objection when Rounsavall again
attempted to testify as to Wong’s alleged statements about illegal drugs.
      Rounsavall argues that these statements were offered to impeach Wong’s credibility and that
his trial counsel should have responded to the objections on that basis. However, Rounsavall
testified that he bought cocaine from Wong, which testimony itself impeached Wong’s. We do
not consider whether there were any reasonable responses to the hearsay objection, because we
find that even if there were, Rounsavall has not shown how his attorney’s failure to respond
prejudiced him.
Jury Note
      Rounsavall argues that the court incorrectly responded to the jury’s note requesting Officer
Herrin’s testimony “about the bike.” The court responded, “There was no testimony by Officer
Herrin about the bicycle either on direct examination or cross examination.” Rounsavall points
to two statements made by Herrin on direct examination to support his contention that the court
responded incorrectly. The jury note read as follows. “We disagree about the testimony of the
first officer Herrin about the bike and we need to see that portion to make our 100% decision.” 
Rounsavall cites the following portions of the transcript as responsive to this inquiry. 
      STATE:      Were you ever able to get a description of the suspect?
 
      HERRIN:    Yes.
 
      STATE:      And what was that description?
 
      HERRIN:    The description was a white male wearing blue jeans, and a dark shirt, on a
black bicycle.

. . .
 
      STATE:      And so where did your investigation take you after you realized that you had
gotten the wrong brother?
 
      HERRIN:    After I stayed at the scene, and when I took Michael back to Colbys, and I
talked to more witnesses there, and once Officer Lundquist arrived back with
me, we gave everybody looking around another description on the radio, in case
he was riding around, because we were told he was on a bicycle, and we went
back to 1910 Cleveland to speak with Betty again.
We find Officer Herrin’s mention of the bicycle to be incidental. Moreover, Rounsavall has not
shown that the testimony would have had any impact on the verdict. We overrule issue one.
Punishment Phase
      Finally, Rounsavall argues that his attorney rendered ineffective assistance in the punishment
phase by not objecting to the State’s failure to properly connect him to seven prior convictions. 
We note, however, that the court’s charge instructed the jury that the range of sentencing was “not
less than twenty-five years nor more than ninety-nine years or life.” The jury assessed punishment
at thirty years’ confinement in the Texas Department of Criminal Justice—Institutional Division. 
Rounsavall has not shown based on this record that the result would have been different but for
his counsel’s alleged errors. See Strickland, 466 U.S. at 690, 104 S.Ct. at 2066; Thompson v.
State, 9 S.W.3d at 812.
      We overrule issue two.
CONCLUSION
      Having addressed each of Rounsavall’s claims, we affirm the judgment.
 
                                                                   BILL VANCE
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and 
      Justice Gray
Affirmed
Opinion delivered and filed July 30, 2003
Do not publish
[CRPM]