In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00250-CR
______________________________


JEFFREY BOONE, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 02F0369-202


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Because of a broken radio, Jeffrey Boone assaulted a prison guard and inflicted several
serious injuries.


 A jury found Boone guilty of assault on a public servant, found the enhancements
to be true, and assessed punishment at eighty-five years' imprisonment. Boone appeals alleging that
the trial court (1) improperly instructed the jury as to the appropriate range of punishment and (2)
abused its discretion in disallowing a voir dire question concerning the views of the potential jurors
on the credibility of prison guards. We affirm the judgment of the trial court.
1. Boone's Sentence Is Lawful and Egregious Harm Has Not Been Shown
Â Â Â Â Â Â Â Â Â Â Â Â Boone first complains the trial court improperly instructed the jury as to the appropriate range
of punishment. The State alleged two prior felony convictions, and the trial court instructed the jury
as to the punishment range for a felony enhanced by two prior felony convictions under Section
12.42(d) of the Texas Penal Code. See Tex. Pen. Code Ann. Â§ 12.42(d) (Vernon Supp. 2004â2005). 
Because the prior convictions were not in the right sequence for habitual status, Boone could not be
legally sentenced under Section 12.42(d).
Â Â Â Â Â Â Â Â Â Â Â Â The first prior felony conviction must become final before the commission of the second
felony in order to allow enhancement under Section 12.42(d). Section 12.42(d) of the Texas Penal
Code provides:
If it is shown on the trial of a felony offense . . . that the defendant has previously
been finally convicted of two felony offenses, and the second previous felony
conviction is for an offense that occurred subsequent to the first previous conviction
having become final, on conviction he shall be punished by imprisonment in the
institutional division of the Texas Department of Criminal Justice for life, or for any
term of not more than 99 years or less than 25 years.

Id. If the second felony offense is committed before the conviction for the first felony offense
becomes final, Section 12.42(d) does not apply. While the indictment appears to allege a valid
enhancement on its face, the evidence at trial conclusively proved


 that Section 12.42(d) does not
apply to Boone.



Â Â Â Â Â Â Â Â Â Â Â Â Â While the enhancement under Section 12.42(d) is improper, the next question is whether the
sentence is unlawful. If a punishment is not authorized by law, the sentence is "void" and error need
not be preserved at the trial court level. Hern v. State, 892 S.W.2d 894, 896 (Tex. Crim. App.
1994); see Scott v. State, 988 S.W.2d 947, 948 (Tex. App.âHouston [1st Dist.] 1999, no pet.). But
see Speth v. State, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999) (objections to community supervision
must be preserved at trial court level). 
Â Â Â Â Â Â Â Â Â Â Â Â The sentence in question is within the permissible range of punishment. Aggravated assault
on a public servant is a first-degree felony. See Tex. Pen. Code Ann. Â§ 22.02 (Vernon Supp.
2004â2005). Since Boone was convicted of a first-degree felony, the maximum punishment was life
or ninety-nine years' imprisonment. See Tex. Pen. Code Ann. Â§ 12.32 (Vernon 2003). Because the
sentence is within the permissible range of the correct enhancement, the sentence is not unlawful. 
Â Â Â Â Â Â Â Â Â Â Â Â Now we conduct a harm analysis regarding the erroneous jury instruction as to the minimum
range of punishment. The trial court instructed the jury that, if it found the enhancement paragraphs
true, Boone was subject to a term of imprisonment "of not more than ninety-nine (99) years or less
than twenty-five (25) years." The correct instruction would have informed the jury that Boone was
subject to life or not more than ninety-nine years' or less than fifteen years' imprisonment.



Â Â Â Â Â Â Â Â Â Â Â Â A jury charge's purpose is to instruct the jury on applying the law to the facts of the case. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); Taylor v. State, 146 S.W.3d 801
(Tex. App.âTexarkana 2004, no pet.). If the trial court did not properly instruct the jury on the law
applicable to the case, then doubt is cast on the integrity of the verdict. Id. 
Â Â Â Â Â Â Â Â Â Â Â Â Because no objection was made to the erroneous charge, error was not preserved. Therefore,
we must determine whether the incorrect instruction resulted in "egregious harm."


 Egregious harm
results from errors that deny the defendant a "fair and impartial trial," "go to the very basis of the
case," "deprive the defendant of a 'valuable right,'" or "vitally affect his defensive theory." Almanza,
686 S.W.2d at 172. To determine whether there was egregious harm, we consider (1) the entire jury
charge, (2) the evidence on contested issues and the weight of probative evidence, (3) counsel's
argument, and (4) any other relevant information in the record. Bailey v. State, 867 S.W.2d 42, 43
(Tex. Crim. App. 1993); Taylor, 146 S.W.3d at 810. Boone has not shown that the error resulted
in egregious harm. Even though the jury was instructed that Boone's minimum sentence was twenty-five years' imprisonment, the jury assessed punishment at eighty-five years' imprisonment. Given
the severity of the sentence assessed in relation to the instructed minimum sentence, egregious harm
has not been shown.


 See Holt, 899 S.W.2d at 25 (finding eighty year sentence on first-degree felony
improperly enhanced under Section 12.42(d) harmless beyond a reasonable doubt). We note that
"[e]gregious harm is a difficult standard to prove and such a determination must be done on a
case-by-case basis." Hutch, 922 S.W.2d at 171. Because the sentence is lawful and egregious harm
resulting from the erroneous jury charge has not been shown, we overrule Boone's first point of error.
2. No Abuse of Discretion Concerning Voir Dire Question
Â Â Â Â Â Â Â Â Â Â Â Â Boone argues, in his second point of error, that the trial court prevented him from asking a
proper question during voir dire which kept him from finding potential challenges for cause and
intelligently exercising his peremptory strikes. Boone contends the question, although a commitment
question, could have provided a basis for a legitimate challenge for cause and, therefore, the trial
court abused its discretion in sustaining the objection. We review the trial court's decision to sustain
the objection under an abuse of discretion standard. Allridge v. State, 762 S.W.2d 146, 163 (Tex.
Crim. App. 1988). 
Â Â Â Â Â Â Â Â Â Â Â Â During voir dire, Boone's attorney informed the potential jurors that most of the witnesses
in the trial would be either prison guards or inmates, that they would not know anything about the
witnesses other than the "general label that they're either a guard or convicted felon," and asked the
potential jurors, "How reliable do you believe a prison guard's testimony is: (1) [sic] very unreliable,
unreliable, reliable, or very reliable." When the State objected to the question on the basis that the
question was an impermissible commitment question, the trial court sustained the objection. 
Â Â Â Â Â Â Â Â Â Â Â Â The Texas Court of Criminal Appeals has defined commitment questions as questions that
"commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after
learning a particular fact." Woods v. State, 152 S.W.3d 105 (Tex. Crim. App. 2004); Lydia v. State,
109 S.W.3d 495, 499 (Tex. Crim. App. 2003); Standefer v. State, 59 S.W.3d 177, 179 (Tex. Crim.
App. 2001). "[A]lthough commitment questions are generally phrased to elicit a yes or no answer,
an open-ended question can be a commitment question if the question asks the prospective juror to
set the hypothetical parameters for his decision-making." Standefer, 59 S.W.3d at 180. Generally,
commitment questions should not be allowed unless the law requires the juror to make the
commitment. Id.
Â Â Â Â Â Â Â Â Â Â Â Â Not all commitment questions are improper. "A commitment question can be proper or
improper, depending on whether the question leads to a valid challenge for cause." Lydia, 109
S.W.3d at 498. The inquiry for improper commitment questions has two steps: "(1) Is the question
a commitment question, and (2) Does the question include factsâand only those factsâthat lead
to a valid challenge for cause?" Standefer, 59 S.W.3d at 182.
Â Â Â Â Â Â Â Â Â Â Â Â When a potential juror indicates that he or she would always believe a police officer, the
potential juror is expressing a bias against the defendant and should be struck for cause. Hernandez
v. State, 563 S.W.2d 947, 950 (Tex. Crim. App. 1978). On the other hand, a tendency to believe or
disbelieve the testimony of a police officer more than other witnesses may be sufficient to justify the
trial court in excusing the potential juror for cause, but does not require the juror to be excused for
cause. Compare Leach v. State, 770 S.W.2d 903, 907 (Tex. App.âCorpus Christi 1989, pet. ref'd),
with Smith v. State, 907 S.W.2d 522, 530 (Tex. Crim. App. 1995), and Zakkizadeh v. State, 920
S.W.2d 337, 339â40 (Tex. App.âHouston [1st Dist.] 1995, no pet.). The question includes more
facts than would be necessary to give rise to a challenge for cause. A proper commitment question
must contain only those facts necessary to test whether a prospective juror is challengeable for cause. 
Standefer, 59 S.W.3d at 182. Boone's attorney asked the question in the context of the previous
dialogue which informed the juror that he or she would know nothing about the witness other than
he was a prison guard. The fact that the juror would know nothing about the witness other than the
"general label" that he or she is a prison guard is not necessary to give rise to a challenge for cause.
Â Â Â Â Â Â Â Â Â Â Â Â The Texas Court of Criminal Appeals has ruled an improper commitment question was asked
when a prosecutor posed to a jury panel, "Do each of you feel as though you could evaluate a witness
and his testimony and decide if he's being truthful without automatically dismissing his testimony
because of some criminal history?" See Lydia, 109 S.W.3d at 496. The Texas Court of Criminal
Appeals held that, although the question was not in the normal form for a commitment question, it
nonetheless tended to commit potential jurors to evaluating witness credibility in a certain way. On
the authority of Lydia, we hold that the question posed by Boone's counsel was an improper
commitment question. Though the question before us was in a different form than the usual
commitment question and than that used in Lydia, it nonetheless tended to commit potential jurors
to a certain way of evaluating witness credibility beyond anything required by law. The trial court
was correct in its ruling.
Â Â Â Â Â Â Â Â Â Â Â Â We overrule Boone's second point of error.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â October 4, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â March 16, 2005

Do Not Publish



nbsp;

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00068-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MENIA MARIA XAYAVONG,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 159th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Angelina County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. CR-28306

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

At about midnight, Deshun Whitby was driving
a Cadillac and Menia Maria Xayavong was driving a Lincoln Navigator traveling
close together on Highway 59 in Angelina County.Â  Whitby was stopped for a traffic violation;
several miles further down the highway, Xayavong was stopped by a second officer
for a separate traffic violation.Â  WhitbyÂs
vehicle contained several pounds of marihuana, and XayavongÂs vehicle had none,
but WhitbyÂs driverÂs license was found in XayavongÂs vehicle.Â  The arresting officer detected an odor of
marihuana on the passenger in XayavongÂs vehicle, Jack Sayadeth.Â  The State charged Whitby, Xayavong, and
Sayadeth with possession of the marihuana
found in the Cadillac driven by Whitby.Â  Whitby
pled guilty, and Xayavong and Sayadeth were tried as co-actors.Â  After the bench trial, both Xayavong and
Sayadeth were found guilty and sentenced to two yearsÂ confinement in the state
jail.Â Â Â  

On appeal, Xayavong argues that the trial
court erred by denying her motion for directed verdict because the evidence was
legally and factually insufficient to support the conviction.

We reverse the trial courtÂs judgment
finding Xayavong guilty and render a judgment of acquittal because there is
legally insufficient evidence linking her to the drugs.[1]

Â 

Â 

I.Â Â Â Â Â Â Â Â Â  Additional Facts

Â 

The
driver of the Cadillac, Deshun Whitby, was nervous and did not have his driverÂs
license or valid proof of insurance.Â 
Whitby did not appear intoxicated or smell of alcohol or drugs.Â  Whitby claimed to be traveling alone,
returning to Arkansas from visiting his brother in Houston. 

Whitby
testified, and a computer check on the license plate confirmed that the vehicle
was registered to Xayavong. Â The
arresting officer testified that Whitby told him he was driving XayavongÂs car
because Âhis was broke down.ÂÂ  At trial,
Whitby and Xayavong testified that, a few weeks prior to the events in
question, Whitby agreed to purchase the Cadillac from his former schoolmate,
Xayavong.Â  He paid her $500.00, and she
allowed him to drive the car while making payments on the balance.Â  

Whitby
gave consent to search the Cadillac.Â  Nothing
was found in the passenger compartment, but four pounds of marihuana was
discovered in the vehicleÂs trunk, concealed in the wheel well beneath a
bolted-on speaker box. Â 

About
two miles from where the Cadillac was stopped, a second officer stopped
Xayavong, driving the Lincoln, after she changed lanes twice without signaling.Â  The arresting officer testified that both
Xayavong and Sayadeth were nervous and gave conflicting answers about their
trip. Â Xayavong said that she arrived in
Houston on Wednesday and was visiting family there.Â  Sayadeth stated that he was visiting family
in Houston and that he had arrived in Houston on Monday.Â  She and Sayadeth both claimed that no one was
traveling with them, but Sayadeth later admitted that a friend of theirs was
driving XayavongÂs car back to Arkansas for them.[2]Â  While questioning Sayadeth, the officer noticed
the smell of marihuana on Sayadeth and, based on that smell, he searched the
vehicle.Â  The only thing of note that was
found during the search was WhitbyÂs driverÂs license. 

Whitby
pled guilty and admitted that he bought and hid the drugs and that neither of
the other two defendants knew anything about it.Â  

II.Â Â Â Â Â Â Â  There Is Legally Insufficient Evidence
Linking Xayavong to the Drugs Found in the Â Â Â Â Â Â Â Â Â Â Â  Cadillac

Â 

Xayavong argues that the trial court erred
by denying her motion for directed verdict because the evidence was legally
insufficient to link her to the marihuana found in the Cadillac.Â  We agree.

Â Â Â Â Â Â Â Â Â Â Â  In reviewing
the evidence for sufficiency, we consider the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.Â  Jackson
v. Virginia, 443 U.S. 307, 318Â19 (1979). Â In the Brooks
plurality opinion, the Texas Court of Criminal Appeals found Âno meaningful
distinction between the Jackson v.
Virginia legal-sufficiency standard and the Clewis[3] factual-sufficiency
standard, and these two standards have become indistinguishable.ÂÂ  Brooks v.
State, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6,
2010) (4-1-4 decision).Â  Further, a
proper application of the Jackson v.
Virginia legal sufficiency standard is as exacting a standard as any
factual sufficiency standard.Â  See id. at *11.Â  In a concurring opinion, Judge Cochran
pointed out that the United States Supreme Court has rejected a legal
sufficiency test that requires a finding that Âno evidenceÂ supports the
verdict because it affords inadequate protection against potential
misapplication of the Âreasonable doubtÂ standard in criminal cases.Â  Id.
at *16 (Cochran, J., concurring).Â  Rather
than meeting a mere Âno evidenceÂ test, legal sufficiency is judged not by the
quantity of evidence, but by the quality of the evidence and the level of
certainty it engenders in the fact-finderÂs mind.Â  Id.
at *17.

Â Â Â Â Â Â Â Â Â Â Â  In order to
prove its case under Section 481.121 of the Texas Health and Safety Code,[4]
the State was required to prove that (1) Xayavong exercised actual care,
control, and management over the contraband; and (2) Xayavong knew the
substance in her possession was contraband.Â 
Poindexter v. State, 153
S.W.3d 402, 405 (Tex. Crim. App. 2005); Murphy
v. State, 200 S.W.3d 753, 761 (Tex. App.ÂTexarkana 2006), affÂd, 239 S.W.3d 791 (Tex. Crim. App.
2007); see Tex. Health & Safety Code Ann. Â§ 481.115(a) (Vernon 2010).Â  ÂPossessionÂ is defined as Âactual care,
custody, control, or management.ÂÂ  Tex. Penal Code Ann. Â§ 1.07(a)(39)
(Vernon Supp. 2010).

Â Â Â Â Â Â Â Â Â Â Â  Generally,
when an accused is not in exclusive possession of the place where contraband is
found, additional independent facts and circumstances must be developed which
link the defendant to the contraband in order to raise a reasonable inference
of the defendantÂs knowledge and control of the contraband.Â  Poindexter,
153 S.W.3d at 406.Â  This rule is designed
to protect an innocent bystander from conviction merely because of fortuitous
proximity to someone elseÂs drugs.Â  Evans v. State, 202 S.W.3d 158, 161Â62
(Tex. Crim. App. 2006).Â  Mere presence in
the vicinity of a controlled substance is insufficient to show possession.Â  But proximity, when combined with other
direct or circumstantial evidence, may be sufficient to establish beyond a
reasonable doubt a personÂs possession of a controlled substance.[5]Â  See id.
(direct or circumstantial evidence may be sufficient to establish possession
beyond a reasonable doubt). Â The evidence
linking the accused to the contraband Âmust establish, to the requisite level
of confidence, that the accusedÂs connection with the drug was more than just
fortuitous.Â Â Poindexter, 153 S.W.3d at 405Â06.Â 
The number of links is not dispositive; rather, we look to the Âlogical
force of all of the evidence, direct and circumstantial.ÂÂ  Evans,
202 S.W.3d at 162.

Â Â Â Â Â Â Â Â Â Â Â  The
following is a nonexclusive list of factors that have been found to be
sufficient, either singly or in combination, to establish a personÂs possession
of contraband: Â (1) the defendantÂs
presence when a search is conducted; (2) whether the contraband was in plain
view; (3) whether the contraband was in close proximity to, or accessible by,
the defendant; (4) whether the place where the contraband was found was
enclosed; (5) whether the defendant was under the influence of narcotics when
arrested; (6) whether the defendant possessed other contraband or narcotics
when arrested; (7) whether the defendant made incriminating statements when
arrested; (8)Â whether the defendant attempted to flee; (9) whether the
defendant made furtive gestures; (10)Â whether there was an odor of
contraband present at the scene; (11) whether other contraband or drug
paraphernalia were present; (12) whether the defendant owned or had a right to
possess the place where the contraband was found; (13) whether the defendant
was found with a large amount of cash; (14) whether the defendant possessed
weapons; and (15) whether conduct of the defendant indicated a consciousness of
guilt. Â Evans, 202 S.W.3d at 162 n.12; Hargrove
v. State, 211 S.W.3d 379, 385Â86 (Tex. App.ÂSan Antonio 2006, pet. refÂd).

Â Â Â Â Â Â Â Â Â Â Â  Whitby
testified that he bought and concealed the drugs and stated that Xayavong had
no knowledge of it.Â  The State emphasizes
that the drugs were found concealed in a vehicle Xayavong owned; that her
passenger smelled of marihuana; that she, Sayadeth and Whitby were nervous and
gave conflicting statements about their travels; and, even though the two
vehicles were traveling together, she did not stop when Allen stopped the Cadillac.
Â The evidence further shows that Xayavong
was several miles away from where the marihuana was found.Â  There is no evidence that it was ever
accessible or in close proximity to Xayavong.Â 
The rule is usually expressed that Âpresence or proximity, when combined
with other evidence, either direct or circumstantial (e.g., ÂlinksÂ) may well
be sufficient to establish [the element of possession] beyond a reasonable
doubt.Â Â Evans, 202 S.W.3d at 162 (a strong proximity finding was
established when the drugs were found Âright under his noseÂ combined with
other factors was legally sufficient evidence).Â 
Here, there is no evidence that Xayavong was in close proximity to the
marihuana or had access to it; the links (ownership of vehicle, inconsistent
statements, failure to stop) stand alone.Â Â 


Â Â Â Â Â Â Â Â Â Â Â  The State
has cited Duvall v. State, 189 S.W.3d
828 (Tex. App.ÂHouston [1st Dist.] 2006, pet. refÂd).Â  In that case, there was testimony that Duvall
placed a bag containing the illegal substance in the vehicle and, therefore,
was jointly in possession of the substance even though Duvall was in another
vehicle when the drug was seized.Â  No
such other connecting evidence is present in this case.Â  Evidence that Xayavong owned the vehicle
where the marihuana was found and that the vehicle Xayavong was driving
contained the driverÂs license of Whitby are sufficient to establish a
connection between the two drivers and vehicles, but even viewing the evidence
in the light most favorable to the verdict, the quality of the evidence here is
too weak and the links too attenuated for a rational trier of fact to find beyond
a reasonable doubt that Xayavong knew of, or 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

had control over, the contraband. Â Accordingly, we reverse the trial courtÂs
judgment finding Xayavong guilty and render a judgment of acquittal.[6]

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Jack Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  November
9, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  November
10, 2010Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â 

Do Not PublishÂ Â Â Â Â Â Â Â Â Â  

Â 

Â 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.Â  See Tex. GovÂt Code Ann.
Â§ 73.001 (Vernon 2005).Â  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.Â  See Tex.
R. App. P. 41.3.

Â 





[2]At trial, Xayavong, Sayadeth, and Whitby all
testified that the Lincoln was having car trouble and they were concerned that
it might break down on the trip back from Houston.Â  Whitby agreed to drive the Cadillac and
travel with them in case of car trouble.

Â 





[3]Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996).





[4]Tex. Health & Safety Code Ann. Â§
481.121 (Vernon 2010).

Â 





[5]The Texas Court of Criminal Appeals acknowledged, in a
discussion of the Âaffirmative linksÂ test, that the term ÂaffirmativeÂ adds
nothing to the plain meaning of Âlink.Â Â When
the term ÂlinkÂ is utilized, it is clear that evidence of drug possession is
judged by the same standard as all other evidence. Â Evans,
202 S.W.3d at 162.

Â 





[6]Xayavong
also alleged that the evidence was factually insufficient.Â  In Brooks,
2010 WL 3894613, at **1, 14, a plurality of the Texas Court of Criminal Appeals
abolished the factual sufficiency review established by Clewis and its progeny.Â  The
plurality and Judge Womack agreed that the Jackson
v. Virginia legal-sufficiency standard is the only standard that a reviewing
court should apply in determining whether the evidence is sufficient to support
each element of a criminal offense that the State is required to prove beyond a
reasonable doubt.Â  Id.Â  Even before Brooks, we would not be required to
review factual sufficiency here since we have found the evidence was legally
insufficient.Â