

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00392-CR

Andrisela Marie **NG**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CR-8420
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  August 7, 2013

AFFIRMED

Andrisela Marie Ng challenges her conviction for murder, arguing that the trial court abused its discretion in allowing the prosecutor to propound improper commitment questions to members of the jury panel during voir dire.  We affirm the judgment of the trial court.

### BACKGROUND

Ng was indicted for the offense of murder in the death of her two year-old daughter, Gianna Espinoza.  The State's theory of the case was that Gianna suffered blunt force injuries to her head

while in Ng's care, which subsequently caused Gianna to die from a brain hemorrhage. The indictment alleged that Ng:

> [D]id intentionally and knowing[ly] commit and attempt to commit the felony offense of INJURY TO A CHILD-BODILY INJURY and while in the course of and in furtherance of the commission and the attempted commission of this offense, the defendant did commit and attempt to commit an act clearly dangerous to human life, to-wit: BY STRIKING GIANNA ESPINOZA WITH THE HAND OF THE DEFENDANT, AND BY STRIKING GIANNA ESPINOZA WITH AN OBJECT OR OBJECTS UNKNOWN TO THE GRAND JURY, AND BY STRIKING GIANNA ESPINOZA AGAINST AN OBJECT OR OBJECTS UNKNOWN TO THE GRAND JURY AND BY A MANNER AND MEANS UNKNOWN TO THE GRAND JURY, thereby causing the death of Gianna Espinoza[.]

During voir dire, the prosecutor explained the elements of the charged offense to the venire panel. During the explanation of "what qualifies as an act that's clearly dangerous to human life," the prosecutor asked,

> There's no definitive list but, for example, if a young child is assaulted with a hand or a fist or slammed into something, then are they more or less susceptible than an adult to being killed by such an assault? Do you think [they're] more or less susceptible to being killed?

Ng objected to the question as an improper commitment question. Ng argued it was up to the jury to determine whether those things rise to the level of an act clearly dangerous to human life, and the prosecutor was "trying to commit them that an act clearly dangerous to human [life] would be these things . . . elements she has to prove . . . ." The trial court overruled the objection and instructed the prosecutor to carefully rephrase the question. The prosecutor then rephrased the question as, "If a young child is assaulted, you know, with a hand or being slammed against something, are they more susceptible to being seriously injured than an adult?" The record indicates the panel responded in unison, but does not state the nature of the response. The prosecutor then asked if there were any questions on that topic. An unidentified venire member inquired about accidental deaths in which a parent might hit a child in a fit of anger or in an effort to discipline the child. The prosecutor explained in part that,

> [F]elony murder also applies in cases where the child dies of complications that are attributed to the assault. For instance, an example would be where a person beats up their child and they're not intending to kill them but they're intending to discipline them and the child develops complications, doesn't die right away, but complications develop. For example, they were struck in the head and the child started having brain hemorrhaging and they died as a result of brain—blood in their brain.

Defense counsel promptly objected and asked to approach the bench. Defense counsel stated, "I would say that that's definitely getting into the facts of the case talking about brain hemorrhaging and things like that." The court overruled the objection and instructed the prosecutor to stay away from the facts of the case. The prosecutor then continued, "So I was just giving you an example where a child develops complications like bleeding on the brain as a result of the assault. That's still considered felony murder. Does everybody understand that? Does anybody disagree with the law?" One venire person, number 43, raised their hand. The prosecutor then moved on into another area.

At the conclusion of the trial, the jury returned a verdict of guilty to the charge of murder, and Ng was sentenced to 50 years' imprisonment. Ng now appeals.

## ANALYSIS

In her sole issue on appeal, Ng asserts the trial court committed reversible error by overruling her objections to the State's improper commitment questions. Specifically, Ng argues that the voir dire questions posed by the prosecutor were designed to ascertain whether or not members of the jury panel could find the requisite intent based upon a certain fact or set of facts that mirrored the facts that ultimately formed the evidentiary basis of the State's case, thus obligating the panel members to return a verdict of guilty if that factual scenario were demonstrated during trial. We review a trial court's ruling on an allegedly improper commitment question during voir dire for an abuse of discretion. *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011); *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

"[A]n attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts." *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991). Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Commitment questions are typically impermissible because they serve no purpose other than to commit the jury to a specific set of facts before the presentation of any evidence. *Wingo v. State*, 143 S.W.3d 178, 185 (Tex. App.—San Antonio 2004), *aff'd*, 189 S.W.3d 270 (Tex. Crim. App. 2006); *see Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005) (purpose of prohibiting improper commitment questions is to ensure the jury will listen to the evidence with an open mind, impartial and without bias or prejudice, and render a verdict based on the evidence). To determine if a question in voir dire is improper, the court must decide (1) whether the question is truly a "commitment question," and (2) whether the question includes only those facts that may lead to a valid challenge for cause. *Standefer*, 59 S.W.3d at 182. If the answer to the first question is "yes" and the answer to the second question is "no," then the voir dire question is an improper commitment question. *Id.* at 182-83.

Commitment questions may be proper when the law requires certain types of commitments from jurors and the question may lead to a valid challenge for cause. *Lydia v. State*, 109 S.W.3d 495, 498 (Tex. Crim. App. 2003); *Wingo*, 143 S.W.3d at 185. For example, attorneys may ask the prospective jurors whether they can follow the law. *Lydia*, 109 S.W.3d at 498. However, even in those instances, "a commitment question must contain *only* those facts necessary to test whether a prospective juror is challengeable for cause." *Standefer*, 59 S.W.3d at 182; *see* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006).

The Court of Criminal Appeals addressed the issue of commitment questions in *Lydia*, where the prosecutor asked the panel, "Do each of you feel as though you could evaluate a witness

and his testimony and decide if he's being truthful without automatically dismissing his testimony because of some criminal history?" *Lydia*, 109 S.W.3d at 499. The Court held that the question was indeed a commitment question because it asked the jurors to resolve the issue of witness credibility based on the particular fact that the witness had a criminal background. *Id.* The Court explained that the prosecutor did not ask whether the venire members could impartially evaluate testimony, but instead asked the venire members to resolve the credibility of a witness based on a particular fact about that witness. *Id.*

Here, the State did not merely review the statutory elements of the charged offense and ask whether the venire members could impartially apply the law. Rather, the State sought a commitment from the potential jurors that a defendant is guilty of murder if she strikes a child in the head and the child later dies of complications such as "brain hemorrhaging," facts closely resembling the specifics of the case. Thus, the State's question based on this hypothetical set of facts was improper because it attempted to create a bias or prejudice in the venire members before any evidence was presented. *See Sanchez*, 165 S.W.3d at 712. Moreover, the hypothetical question was improper because it did not include only those facts necessary to test whether a venire member was challengeable for cause. *Standefer*, 59 S.W.3d at 182. By presenting a "hypothetical" scene very close to the facts of the case, the State's question went beyond simply explaining the statutory framework and inquiring whether the venire members could follow the applicable law.

Even though the trial court abused its discretion by allowing the State's improper commitment question, the error is not immune from a harmless error analysis. *Gonzales v. State*, 994 S.W.2d 170, 171 (Tex. Crim. App. 1999). The standard of harm set out in Rule 44.2(b) of the Texas Rules of Appellate Procedure is the proper test to determine whether a defendant has been harmed by an improper commitment question. *Sanchez*, 165 S.W.3d at 713; *see* TEX. R. APP. P. 44.2(b) (inquiry is whether defendant's substantial rights were affected by error); *see also Woods*

*v. State*, 152 S.W.3d 105, 109-110 (Tex. Crim. App. 2004) ("A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict."). In determining harm, we "assess the potential harm of the State's improper commitment questioning by focusing on whether a biased juror—one who had explicitly or implicitly promised to prejudge some aspect of the case because of the State's improper questioning—actually sat on the jury." *Sanchez*, 165 S.W.3d at 713. The reviewing court must ultimately determine whether the jury as a whole, or any specific juror, was "poisoned" by the State's improper commitment questions on a legal or fact issue important to the verdict. *Id.*

In determining whether the State's improper commitment questions to the venire panel were harmful, we may consider the following factors:

1) whether the questions were unambiguously improper and attempted to commit one or more venire members to a specific verdict or course of action;

2) how many, if any, venire members agreed to commit themselves to a specific verdict or course of action if the State produced certain evidence;

3) whether the venire members who agreed to commit themselves actually served on the jury;

4) whether the defendant used peremptory challenges to eliminate any or all of those venire members who had committed themselves;

5) whether the defendant exhausted all of her peremptory challenges upon those venire members and requested additional peremptory challenges to compensate for their use on improperly committed venire members;

6) whether the defendant timely asserted that a named objectionable venire member actually served on the jury because she had to waste strikes on the improperly committed jurors; and

7) whether there is a reasonable likelihood that the jury's verdict or course of action in reaching a verdict was substantially affected by the State's improper commitment questioning during voir dire.

*Id.*

Here, there is nothing in the record to indicate whether any identifiable venire members explicitly or implicitly agreed to commit themselves to a specific verdict or course of action as a result of the improper commitment question. The record does not identify the number of the venire person who questioned the State about a child's accidental death from being struck. Thus, there is no way to know whether that venire member was struck for cause or peremptorily, or whether he or she was chosen to sit on the jury. The record does indicate that venire member #43 raised their hand as having a concern or problem with following the law on what constitutes felony murder, as explained by the prosecutor, but the record shows that person was excused and did not sit on the jury. Therefore, the record does not show that an objectionable venire member actually served on the jury. In addition, the record is silent as to whether Ng exhausted all of her peremptory challenges. It does not show that Ng requested more peremptory challenges. Accordingly, we hold that although the trial court abused its discretion by allowing the State's improper commitment question, based on the record before us, the error did not affect Ng's substantial rights. Thus, we overrule Ng's sole issue on appeal and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

Do not publish