**Allen D. LEACH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–88–049–CR.**

Court of Appeals of Texas,
Corpus Christi.

May 4, 1989.
Rehearing Denied May 25, 1989.

Phillip M. Westergren, Corpus Christi, for appellant.

Carlos Valdez, County Atty., Corpus Christi, for appellee.

Before BENAVIDES, UTTER and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

A jury convicted appellant, Allen Leach, of driving while intoxicated (D.W.I.), a misdemeanor offense. The trial court assessed punishment at 90 days' confinement in the Nueces County Jail, probated for twenty-four months, and a fine of $700. On appeal, appellant presents six points of error for review. We affirm the conviction.

By his first point of error, appellant alleges that the trial court erred in denying his motion to set aside the information because "it did not allege the type of substance causing the intoxication, and thus [it] did not place appellant on notice of that which he was charged." We agree.

Tex.Rev.Civ.Stat.Ann. art. 67011-1(b) (Vernon Supp.1989) provides that "A person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place." Tex.Rev. Civ.Stat.Ann. art. 67011-1(a)(2) (Vernon Supp.1989) defines intoxication as:

(A) not having the normal use of mental or physical faculties by reason of introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; or (B) having an alcohol concentration of 0.10 or more.

It is well established that when an act or omission by a defendant is statutorily defined, and that definition provides more than one way to commit the act or omission, then, upon timely request, the State must allege the manner and means it seeks to establish.

The information in the record before us alleges that on or about February 9th, 1987, appellant "did then and there, while intoxicated, drive and operate a motor vehicle in a public place." The information fails to assert whether appellant's intoxication was caused by alcohol, a controlled substance, a drug, or any combination thereof, nor does it assert that appellant had an alcohol concentration of .10 or more. Appellant timely filed a motion to set aside the information asserting that since the information did not allege the type of substance which caused the intoxication, the information did not provide him with adequate notice.

Recently, the Court of Criminal Appeals held that the type of substance causing the intoxication is a necessary element in a prosecution under Article 67011-1(b). *Garcia v. State*, 747 S.W.2d 379, 381 (Tex.Crim. App.1988). The Court, therefore, concluded that a charging instrument which alleges an offense under Art. 67011-1(b), "must allege the intoxicant singularly, or in disjunctive combination." *Id.*

Since, in the instant case, the information did not allege the intoxicant as required in *Garcia*, we conclude that the information was defective. However, an indictment shall not be held to be insufficient by reason of any defect of form which does not prejudice the substantial rights of the defendant. Tex.Code Crim.Proc.Ann. art. 21.19 (Vernon 1966).

If a charging instrument does not give adequate notice, we must then determine if this defect had an impact on the defendant's ability to prepare a defense, and finally, how great an impact. *Garcia,* 747 S.W.2d at 381, n. 4; *Adams v. State,* 707 S.W.2d 900, 903 (Tex.Crim.App.1986); *Ray v. State,* 749 S.W.2d 939, 942 (Tex.App.—San Antonio 1988, pet. ref'd); Tex.Code Crim.Proc.Ann. art. 21.19 (Vernon 1966).

In the instant case, the State contends that the appellant was not harmed by the "notice defect." The record reveals that appellant filed six pre-trial motions, including a motion to exclude testimony that he refused to take a breath test and testimony concerning videotape evidence. Appellant also filed a motion to dismiss the cause, alleging his warrantless arrest was illegal and without probable cause. Pre-trial hearings were held on the motions, during which appellant learned from the testimony of the complaining witness and the arresting officer that the State would attempt to prove that his faculties were impaired by the consumption of alcohol. *See Ray,* 749 S.W.2d at 942–43.

Likewise, the voir dire conducted by appellant clearly indicates that appellant knew the State would attempt to prove that intoxication was caused by the consumption of alcohol and no other substance. Appellant could not have been surprised, and was indeed able to prepare his defense because he was aware of the State's theory well in advance of trial. We have examined the entire record and conclude that the notice deficiency in the charging instrument did not harm the defendant.

■ By his second point of error, appellant contends that "the trial court erred in ruling that the *arrest* of appellant was valid and with probable cause, and in overruling [his] objection to [the] *illegal arrest.* (emphasis added)." In his brief, appellant specifically urges that the conviction should be reversed because appellant's arrest was illegal.

The record reveals that appellant filed a pre-trial motion to dismiss the complaint on the grounds that the arresting officer had no probable cause to stop him for D.W.I.

An evidentiary hearing was held on the motion.

At the hearing Dalinda Quintanilla, the complaining witness, testified that appellant lived across the street. Quintanilla testified that on February 9, 1987, at approximately 8:15 p.m., she and her husband observed appellant drive down their street, swerving from side to side. According to Quintanilla, appellant then backed into their driveway, parked with the engine running and continuously pressed the accelerator on his car. He then drove across the street and parked his car in his driveway. Appellant got out of his car, stood on the sidewalk and started yelling. Quintanilla then called the police.

Marshall Lloyd, a police officer with the Corpus Christi Police Department, testified that on February 9, 1987, he was dispatched to the scene. When he arrived at the scene, he saw appellant standing on his sidewalk. According to Lloyd, he asked appellant if he had called the police. Appellant told the officer he had not, but that the "lady across the street probably called." Lloyd testified that he could tell that appellant was drunk because his eyes were bloodshot, he had a strong odor of alcohol on his breath and his speech was slurred.

Shortly thereafter, another officer, Sergeant McDevitt, arrived at the scene. Lloyd and McDevitt then walked across the street and spoke with Quintanilla. Quintanilla told the officers that she and her husband had observed appellant driving his vehicle while he was drunk. After speaking with Quintanilla, Lloyd went across the street to appellant's home. Appellant had gone inside, so he rang the doorbell.

Lloyd testified that appellant came to the door and invited them inside. He further testified that he declined the invitation, but asked appellant to step outside. After appellant complied with the officer's request, Lloyd conducted a field sobriety test. According to Lloyd, appellant failed a few of the sobriety tests and then refused to take any other test. At this point, Lloyd testified that he arrested appellant for D.W.I.

After his arrest, appellant refused to take a breath test, and he was not videotaped.

During cross-examination, Lloyd admitted that (1) he did not have an arrest warrant; (2) he had not seen appellant drive and appellant did not confess to driving his automobile; (3) he did not arrest appellant for either public intoxication or for any kind of breach of the peace; (4) he did not observe appellant commit any offense at his home; and (5) appellant was not in a suspicious place when arrested. Lloyd testified that he arrested appellant without a warrant because time was a critical element since there was a danger that the alcohol would dissipate by the time he obtained a warrant.

After hearing the evidence, the Court denied appellant's motion to dismiss. Appellant unsuccessfully re-urged his motion immediately before jury selection, and at trial appellant strenuously objected to the officer's testimony concerning events which occurred subsequent to the arrest.[1] His objections were overruled, and the trial court found there were exigent circumstances that justified appellant's warrantless arrest.

We need not address whether appellant's arrest was illegal. The Court of Criminal Appeals in *Stiggers v. State,* 506 S.W.2d 609 (Tex.Crim.App.1974) stated the following:

> The sanction imposed against an unlawful search and seizure is the denial of admissibility of evidence seized in the unlawful search. Unlike an unreasonable search producing evidence offered to support a conviction, an arrest is not in itself an evidentiary element of a conviction. *An unreasonable seizure of the person that does not produce evidence of culpability does not per se vitiate a conviction. This is particularly true where, as here, there is no claim that any circumstance of the alleged illegal arrest led to appellant's conviction, the*

*evidence supporting which is unchallenged* (emphasis ours).

Although appellant in the instant case objected at trial to the introduction of post-arrest evidence, on appeal he does not contend that the trial court erred in allowing the introduction of evidence that was obtained from the illegal arrest. Therefore, even if the arrest was illegal, it would not vitiate the conviction. *Stiggers,* 506 S.W. 2d at 611.

■ Under the same point of error, appellant urges this Court to acquit the appellant because the evidence is insufficient to support the conviction. Initially, we note that appellant improperly raises this argument since a challenge to the sufficiency should be raised in a separate point of error. Nonetheless, we find appellant's argument is without merit. Appellant contends that the evidence establishes a significant time interval between when appellant was observed driving and when appellant was observed intoxicated; therefore, he argues the evidence was insufficient to sustain the conviction because he could have consumed the alcohol while inside his home.

The standard of review when determining the sufficiency of the evidence, whether circumstantial or direct, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex. Crim.App.1983). Appellate courts view the facts of the case in the light most favorable to the verdict. *Vasquez v. State,* 665 S.W. 2d 484, 486 (Tex.Crim.App.1984); *Westfall v. State,* 663 S.W.2d 664, 666 (Tex.App.— Corpus Christi 1983, pet. ref'd).

The complaining witnesses, Guadalupe and Dalinda Quintanilla, both testified at trial that at approximately 8:15 p.m. they observed the appellant drive erratically and

---

1. At trial Lloyd testified that, at the police station, appellant refused to take a breath test and a blood test. He also testified that appellant attempted to call his lawyer, but that he was so drunk that he could not dial the telephone. Lloyd also stated that appellant struck the officer with the receiver of the phone. We note that appellant did file a pre-trial motion to suppress; however, such motion did not request suppression of evidence obtained from an illegal arrest.

that he was intoxicated. Additionally, Dalinda Quintanilla testified that she called the police at 8:25 p.m. after she saw appellant stagger down his driveway, onto the street, and heard him yelling. She testified that within four minutes the police arrived.

Likewise, Robert Garza, another neighbor, testified at trial. Garza testified that on the night in question, he observed appellant drive down their street and park his car in his driveway. According to Garza, appellant had to "help himself" out of the car. Garza testified that after appellant got out of his car, he walked towards the street trying to keep his balance and yelling at the same time. Garza told the court that he believed appellant was intoxicated. Police officer Marshall Lloyd testified that when he arrived at the scene he saw the appellant on the curb of the street. He testified that he immediately noticed appellant was drunk, had bloodshot eyes, slurred speech and a strong odor of alcohol on his breath.

In light of the evidence above, we find there was sufficient evidence from which a trier of fact could have found that appellant was intoxicated at the time he was operating his motor vehicle. Appellant's second point of error is overruled.

By his third point of error, appellant contends that the trial court erred in allowing Officer Lloyd to testify at trial about the result of a "gaze nystagumus" test when he was unqualified to do so.

At the trial on the merits, Officer Lloyd testified that he conducted a field sobriety test on appellant. One of the tests that Lloyd conducted was the gaze nystagumus test. Lloyd testified, without objection, that the gaze nystagumus test is a procedure whereby a police officer can determine if the suspect is intoxicated by observing his eyes. Lloyd explained to the court the following:

What you do is you have him hold the head still, and you hold a pen or any kind of object, something they can fix their eyes on. Then I will take that object and move it off to the side back and forth.... The idea—what you are looking at is to, if you can see rapid eye

movement, there will be a jerking of the eye.

Lloyd then testified that he conducted this test on appellant and found that appellant had "distinct jerky movement of the eyeball." After this testimony was elicited, appellant objected on the basis that there was no evidence that the officer was qualified to administer the test.

It is established that an objection must be timely, and that no error is presented where a question is asked and answered prior to an objection and no motion to withdraw testimony from the jury is made. *Marini v. State*, 593 S.W.2d 709 (Tex.Crim. App.1980); *Guzman v. State*, 521 S.W.2d 267 (Tex.Crim.App.1975). Since appellant did not make a timely objection, he did not preserve error. Nonetheless, the evidence establishes that the officer was indeed qualified. Lloyd testified that he was certified to give the gaze nystagumus test after he took a three day training course which taught him how to administer the test. Appellant's third point of error is overruled.

■ Appellant, in his fourth point of error, complains that the trial court erred in sustaining the State's challenge for cause of prospective juror Harold Snow.

During the voir dire examination, the prosecutor asked the jury panel, if any of them had a bad experience with police officers. Prospective juror Harold Snow told the prosecutor that his son had been unjustly stopped by police officers on three separate occasions. Upon further questioning, Snow told the court that he would be "skeptical" of any testimony given by police officers, and that he would *"be unfair to the State."* He further testified that "[he] would be very skeptical just because they are wearing uniforms" and that "[t]hey will not get [his] undivided support."

Defense counsel, in an attempt to rehabilitate the juror, asked Snow if he would disbelieve the testimony of an officer just because he was wearing a uniform. Snow responded that he would not. He then explained that he "might" be skeptical of

their testimony, and that if there were only police officers testifying then they "really should pull [him] out because ... [he] would have a hard time with that situation."

Under Tex.Code Crim.Proc.Ann. art. 35.-16(a)(9) (Vernon Pamph.1989), a juror may be excused for cause "if he has a bias or prejudice in favor of or against the defendant." The obvious purpose of the statute is to guarantee fair and impartial jurors for both the State and the defendant. When a juror expresses an inability to be fair and impartial to the State, that juror is expressing a bias for the defendant and is properly excused under article 35.16(a)(9). The juror is not specifically required to state that he has a bias or prejudice.

In the instant case, the juror initially stated unequivocally that he could not be fair to the State. The trial court properly excluded the juror, accordingly appellant's fourth point of error is overruled.

■ By his fifth point of error, appellant contends that the trial court erred in not granting a new trial due to the jury misconduct and bias shown against appellant by jury foreman, Charles Foster.

Appellant contends that during the trial, Foster made statements outside the jury room that appellant was guilty and they were just wasting time going through the trial. Appellant further asserts that Foster's testimony introduced at the motion for new trial demonstrates his obvious bias.[2] Appellant acknowledges that the evidence concerning whether Foster made the statement concerning appellant's guilt is controverted. He further concedes that where there is conflicting evidence, the determination of the issue is within the discretion of the trial court. However, appellant argues that since Foster's testimony reveals that he was obviously biased, "this puts this case outside the scope of those [cases] holding that the trial court's discretion should be upheld" if the evidence of

jury misconduct is controverted. We disagree.

This Court has held that issues of fact concerning jury misconduct raised in a motion for new trial are for the determination of the trial court. *Baldonado v. State*, 745 S.W.2d 491, 495 (Tex.App.—Corpus Christi 1988, pet. ref'd). "If there is any conflicting evidence on the issue of whether the jury received the evidence, a fact question is presented, and the trial court's determination of the question will be overturned on appeal only if an abuse of discretion is shown." *Id.*

We have reviewed the record, and find that the trial court did not abuse its discretion. Appellant's fifth point of error is overruled.

■ Finally, appellant contends by his sixth point of error that the trial court erred during the new trial hearing in not allowing appellant's attorney to inquire into the bias of the jury foreman.

The record reveals that appellant was attempting to elicit testimony from Foster that he was "pushing for a conviction" during the jury deliberation. The trial court refused to allow appellant's attorney to inquire into this area on the ground that he was attempting to go into the mental process of the juror.

■ Tex.R.Crim.Evid. 606(b) prohibits inquiry into the effect of anything upon a juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. Accordingly, the trial court properly limited the appellant's inquiry. Moreover, it is fundamental that jurors are free to discuss, argue and advocate either for or against an acquittal or a conviction. The fact that a juror advocates or "pushes" a particular result during deliberations does not constitute bias or jury misconduct. We overrule appellant's sixth point of error.

2. Specifically, appellant argues that the following statements made by Foster at the hearing demonstrate his bias: (1) after the trial was over, he read the newspapers to see if appellant had been sentenced; and (2) he saw the trial

judge at a public gathering and asked if the appellant had been sentenced, and if the appellant had "political pull" to keep his name out of the paper.

The judgment of the trial court is AF-FIRMED.