

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-21-00025-CR
_____

AMARFIO DEJALO WASHINGTON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 50106-A

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

After a jury found Amarfio Dejalo Washington guilty of two counts of assault on a public servant, the trial court sentenced him to twelve years' confinement in prison on each count, with the sentences to run concurrently.[1]   On appeal, Washington contends that (1) the trial court reversibly erred when it failed to include an instruction on effective consent in its jury charge, (2) he was not present when the jury panel was seated in violation of Articles 33.03 and 35.17 of the Texas Code of Criminal Procedure, (3) the trial court reversibly erred when it granted the State's challenge for cause during jury selection, (4) the trial court reversibly erred when it allowed the State to question the jury panel members on their "level of trust" of law enforcement officers, and (5) the trial court reversibly erred when it denied him the opportunity to present evidence that the charges for which he was incarcerated had been dismissed by the State.  For the reasons stated below, we affirm the trial court's judgment.

## I.     Background

On November 27, 2019, Detention Officer Matthew Overman was conducting perimeter walks in the back hall of Gregg County's north jail, where Washington was being housed.  When Overman passed by Washington's cell, Washington told Overman that he wanted to talk to him.  Overman told Washington that as soon as he finished his rounds, he would return to Washington's cell so they could talk.  Before he was able to return, Overman heard over the

---

[1]Washington also appeals his other conviction of assault on a public servant in companion cause number 06-21-00026-CR, making the identical arguments as those contained in this case.  Consequently, this opinion addresses the issues in both cases.

intercom that an inmate, who was later determined to be Washington, was threatening to harm himself.

Within twenty-five seconds, Officer Anika Hatt joined Overman, and they both entered Washington's cell. The cell floor was covered in water, and Washington "was making loud noise saying that he wasn't going to come with us unless we were rank."[2] Overman said that it was his "duty" to remove Washington from his cell to determine whether he was going to hurt himself. Overman gave Washington a "lawful order" to exit his cell and to come with them. Again, Washington said that he was not going to go with anyone who was "not rank." When Overman gave Washington a third order to exit his cell, he "began yelling, clenched up his fists, took a step at [Overman]," and continued to refuse Overman's order.[3] Overman said he felt threatened by Washington, so he "grabbed his arm, guided him to a wall, [and] placed him against the wall." Overman stated, "[Washington] then began swinging his arms crazy, he pushed Hatt, she hit a bunk, hurt her back." Washington also hit Overman in the face, knocking off his glasses, which resulted in a one-inch scratch on Overman's right cheek. Overman wrapped his arms around Washington and then "assisted him to the ground so that way [they][4] could place him in hand restraints." Overman stated that, through his training, he was aware that

---

[2]According to Overman, "rank" meant "[a] peace officer" or "[a] sworn-in deputy or corporal."

[3]Overman explained that he was trained to follow a "progression" in those types of situations, stating, "Just command presence being there, verbal orders. Usually I try to tell them twice, give them two lawful orders, and if they continue to refuse or be combative I normally try placing soft hands on them." Overman said that "soft hands" meant "touching them and . . . just barely mov[ing] them." If an inmate continued disobeying his orders, then Overman would become more forceful.

[4]By that time, additional officers had arrived to help restrain Washington.

when he entered an inmate's cell, there was always a possibility that he could be assaulted by an inmate.[5]

Captain Luke Whitehead testified that he had worked for Gregg County for over fifteen years. Whitehead explained that the State of Texas had policies and procedures in place on running a jail. In particular, Whitehead described the procedure used by correctional officers when inmates are moved through the jail. He also explained the safety measures that officers use when entering an inmate's cell. In that regard, Overman's handling of Washington complied with the required safety measures.[6]

## II.    Discussion

### A.    Jury Instruction Error

In his first point of error, Washington maintains that the trial court erred when it did not include in its jury charge an instruction on the defensive claim of effective consent.[7]

A trial court "is ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Article 36.14 explains that "the judge shall[,] before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth

---

[5]Correctional Officer Hatt's testimony was, in relevant part, consistent with Overman's testimony.

[6]Antonio Monsivais, a lieutenant with the Greg County Jail and the south jail administrator, testified about the procedures used by the correctional officers if an inmate threatens to hurt himself. In sum, the correctional officers are required to make the situation a priority and to get to the inmate as soon as possible. Monsivais explained that when an inmate asks for a ranking officer, it is a discretionary call on the part of the correctional officer on whether to comply with the inmate's request.

[7]It is a defense to the offense of assault that the victim effectively consented to the offender's assaultive conduct or that the offender reasonably believed that the victim consented, as long as the conduct did not threaten or inflict serious bodily injury. TEX. PENAL CODE ANN. § 22.06.

the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. In fact, the trial court has the duty to instruct the jury on the law applicable to the case even if defense counsel fails to object to exclusions or inclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011). Yet, Article 36.14 does not impose a duty on a trial court to instruct the jury sua sponte on unrequested defensive issues because an unrequested defensive issue is not the law applicable to the case. *Id.* A defendant may not complain on appeal about the trial court's failure to include a defensive instruction that he did not preserve by a request or an objection. *Acosta v. State*, 411 S.W.3d 76, 88 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Taylor*, 332 S.W.3d at 486). In other words, he has procedurally defaulted any such complaint.

Here, Washington did not ask the trial court to include in its jury charge an instruction on the defensive claim of effective consent. As a result, he has waived the issue on appeal. We, therefore, overrule Washington's first point of error.

**B.      Violation of Articles 33.03 and 35.17 of the Texas Code of Criminal Procedure**

In his second point of error, Washington maintains that, because he was not present for the seating of the jury panel, the trial court violated Articles 33.03 and 35.17 of the Texas Code of Criminal Procedure. In support of his position, Washington directs us to the initial portion of the proceedings when the panel was present but Washington was not. Speaking to the jury panel, the trial court stated,

> Okay. Here's what's going to happen. We're going to kind of re-seat you. We're going to call your names out and re-seat you. The good news is, let me tell you, the good news is because ya'll got here timely, and we're kind of ahead, we're going to be able to finish this process well before lunch, okay? Sometimes I've had juries where we didn't start until 10 o'clock, and it went over

5

to -- past lunch. So we're going to re-seat you, and then the attorneys will address you for a little while, and we will pick 13 people to be on our jury which would start tomorrow. So take a little break, just relax, and then we're going to move some chairs around, re-seat you, and go from there. So just stay here, don't leave the room, okay? Let's do an exercise. I know.

Okay. I'm going to call your name out, and we're going to seat you in order beginning over here to my left. Deputy Bozman will help you be seated. And then once we're seated, I'll give you some more instructions, Okay.

In his brief, Washington represents that, after the trial court's explanation above, "it appears that names were called and potential jurors were seated by the bailiff." Yet, the record indicates that the "[d]efendant enter[ed] the courtroom while [the] panel [was] being seated."

Based on that series of events, Washington contends that he was not given the opportunity to "see the way [the panel members] conducted themselves, their body language, their facial expressions."[8] According to Washington, his absence from that portion of the proceedings put him at a distinct disadvantage.

### 1.    Article 33.03

"One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of the trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970) (citing *Lewis v. United States*, 146 U.S. 370 (1892)). Moreover, Article 33.03 of the Texas Code of Criminal Procedure requires the defendant's personal presence at trial, except "when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury." TEX. CODE CRIM. PROC. ANN. art. 33.03.

---

[8]On May 11, 2021, Washington filed an amended motion for new trial and motion in arrest of judgment in which he complained, in part, that he was not present in the courtroom while the jury panel was being seated. During the hearing on his motion, Washington testified that he would have liked to have been present when the panel members entered the courtroom so that he could adequately observe their demeanor.

Washington contends that approximately fifty-five of the approximately sixty-five panel members were seated prior to his entrance into the courtroom. Washington's argument presumes, without citing to any legal authority, that jury selection begins when the panel members walk through the courtroom doors and begin taking their seats. Even assuming, without finding, that he is correct, Washington's claim remains meritless because he has not shown that he was harmed by the alleged error.[9]

Washington complains that because he was not allowed to observe the panel members enter the courtroom and take their seats, he was unable to observe their behavior and mannerisms. Yet, the record shows that Washington was present for at least part of the time the panel was being seated and for every substantive portion of jury selection. He was present at the time the trial court called the case to order, during the trial court's relevant instructions to the jury, when the lawyers for both parties addressed the panel, and when the specific panel members were chosen to sit on the jury. Consequently, it is disingenuous for Washington to claim that he did not have adequate opportunity to observe the panel members' behavior because he did not see all of them sit down in their seats.

### 2. Article 35.17

Article 35.17(1) of the Texas Code of Criminal Procedure states, "When the court in its discretion so directs, except as provided in Section 2, the state and defendant shall conduct the voir dire examination of prospective jurors in the presence of the entire panel." TEX. CODE

---

[9]Under the traditional harm analysis, Washington is required to show that the complained-of error "probably caused the rendition of an improper judgment" or "probably prevented [him] from properly presenting the case to the court of appeals." *See* TEX. R. APP. P. 44.1(a).

7

CRIM. PROC. ANN. art. 35.17(1). In other words, Article 35.17(1) requires that the entire *jury panel* be present during jury selection, not that the *defendant* be present during the entirety of jury selection. Article 35.17(2) of the Texas Code of Criminal Procedure speaks to the parties' ability to address each of the panel members individually in a capital felony case where the State is seeking the death penalty. TEX. CODE CRIM. PROC. ANN. art. 35.17(2). Neither subsection (1) nor subsection (2) of Article 35.17 is applicable to Washington's complaint that he was not present in the courtroom when the jury panel was being seated. Accordingly, we find that there was no violation of Article 35.17.

We overrule Washington's second point of error.

## C. Jury Selection

### 1. The State's Challenge For Cause

In his third point of error, Washington contends that the trial court reversibly erred when it granted the State's for-cause challenge of a "qualified juror."

During jury selection, the State asked the panel members whether they would require more than one witness' testimony in order to find a person guilty of an offense. Venireperson Dixon indicated that she would need more evidence than just one witness. The following discussion then took place in the presence of the entire jury panel:

> [THE STATE]: Oh, no, and I get where you're coming from. In this particular scenario, you would believe that one witness beyond a reasonable doubt, you would find them truthful, credible, and you would say, "I believe that they're telling is the truth, I believe that this happened beyond a reasonable doubt," but would you still want something more?
>
> VENIREPERSON DIXON: Uh-huh, yea. I can't take one person's word.

8

. . . .

[THE STATE]:     No, you said you couldn't take someone at their word.

VENIREPERSON DIXON:     No, no, no. What I'm saying is like -- for example, you're saying that if you -- if I could believe the person that's presenting with just their word, without evidence.

[THE STATE]:     Yes, ma'am. No video, nothing like that.

VENIREPERSON DIXON:     No.

. . . .

[THE STATE]:     I guess what I'm trying to get at is, if you were presented with one witness that you believe beyond a reasonable doubt, you believe what they're saying, you believe that I've established every single element that I've got to establish in the case, in that particular scenario, would you still want something more?

VENIREPERSON DIXON:     And you're telling me you're going to establish this without any -- with no evidence, no video, no --

[THE STATE]:     That's it, just one witness.

VENIREPERSON DIXON:     No.

[THE STATE]:     Okay. You -- even though you believe what they're saying, you believe it beyond a reasonable doubt, you still couldn't come to a decision?

VENIREPERSON DIXON:     Because people -- we can be in a situation and you every -- I may not hear what the other person heard or they make a different interpretation for it. I think that if -- I'm hearing some facts, I ought to have something to back my facts instead of just words.

Later, Dixon was questioned at the bench in the presence of counsel. After Dixon was given multiple hypothetical circumstances and participated in several lengthy discussions, she

9

eventually said, "If I'm listening and I believe it without a reasonable doubt, I don't need [other evidence].  But I just -- when I said that to you, I was just thinking we're living in a society nowadays where it's video, it's cell phones, and all of this stuff is available."  She continued, "That's why I said what I said.  Do you understand?"

The State moved to strike Dixon for cause, and the trial court granted its request. Washington objected to the State striking Dixon for cause, and the trial court allowed him to question Dixon for purposes of the record.  After a brief discussion, Dixon explained, "I think we've got a misunderstanding, and perhaps I have phrased it wrong."  Adding that cameras were so easily accessible in today's society, Dixon conceded that she would be able to find a person guilty based on only one witness' testimony if she believed the person testifying was credible. The trial court then excused Dixon from the courtroom.

Article 35.16(a)(9) of the Texas Code of Criminal Procedure states,

(a)    A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury.  A challenge for cause may be made by either the state or the defense for any one of the following reasons:

. . . .

(9)    That he has a bias or prejudice in favor of or against the defendant.

TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9).  In analyzing whether the trial court erred in its ruling on a challenge for cause, we examine "the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling."  *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011) (citing *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002), *superseded by statute on other grounds*, TEX. CODE CRIM. PROC. ANN. art. 37.071, *as recognized*

*in Coleman v. State*, No. AP-75478, 2009 WL 4696064 (Tex. Crim. App. Dec 9, 2009) (per curium) (not designated for publication). In addition, the Texas Court of Criminal Appeals has held,

> A veniremember is challengeable for cause if (among other reasons) he has a bias in favor of or against the defendant or a bias or prejudice against any of the laws applicable to the case upon which the state or defense is to rely. The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and follow instructions in accordance with the law. Before a prospective juror can be excused for cause on this basis, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views. The proponent of the challenge for cause has the burden of establishing that the challenge is proper, and he does not meet this burden until he has shown that the veniremember understood the requirements of the law and could not overcome his prejudice well enough to follow the law.

*Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020) (citations omitted); *Feldman v. State*, 71 S.W.3d at 744–45.

A trial court's ruling is afforded "great deference" since that court was able to observe both the demeanor and the tone of voice of the venire person. *Gonzales*, 353 S.W.3d at 831 (citing *Feldman*, 71 S.W.3d at 744). "When a veniremember's answers in voir dire are ambiguous, vacillating, unclear, or contradictory, particular deference is given to the trial court's decision." *Tracy*, 597 S.W.3d at 512 (citing *Gardner v. State*, 306 S.W.3d 274, 296 (Tex. Crim. App. 2009)). "A trial judge's ruling on a challenge for cause may be reversed only for a clear abuse of discretion." *Id.*

> The law in Texas is clear:
>
> It is proper for the State to ask during voir dire if jurors can convict on the testimony of one witness if the jurors believe that witness beyond a reasonable doubt on all of the necessary elements that establish an offense because a negative

11

> answer by a juror to the question makes the prospective juror challengeable for cause.

*Blackwell v. State*, 193 S.W.3d 1, 19 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Castillo v. State*, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995)).

Washington argues that the State failed to carry its burden of demonstrating that Dixon would not follow the law because she eventually affirmed that she could listen to all the evidence and return a guilty verdict if the State met its burden of proof. Yet, the acknowledgement by Dixon at the end of a very lengthy discussion does not necessarily require a conclusion that Dixon would actually follow the law and conform to the "one witness rule." We believe that the record, as set forth above, shows that Dixon's responses to the State's questions were clear, unequivocal, and straight forward; that is, she clearly said multiple times that she needed more than just one person's testimony to find an individual guilty of a criminal offense. She specifically noted several times that perhaps the State could produce a recording of some sort since cameras were so readily available in our current society. Her position on the matter became very evident by the State's extended questioning, in which it attempted several times to elicit something other than Dixon's unequivocal answer that she could not follow the "one witness rule." That said, the record supports a finding that Dixon was at least substantially impaired from following the law. As a result, we find no abuse of discretion in the trial court's granting of the State's challenge for cause.

We overrule Washington's third point of error.

12

### 2. The State's Question Regarding the Panel Members' Level of Trust of Law Enforcement Officers

In his fourth point of error, Washington maintains that the trial court erred when it allowed the State to ask the panel members about their level of trust toward law enforcement officers.

A trial court "has broad discretion in the manner it chooses to conduct voir dire, both as to the topics that will be addressed, and the form and substance of the questions that will be employed to address them." *Jacobs v. State*, 560 S.W.3d 205, 210–11 (Tex. Crim. App. 2018) (footnotes omitted). Questions that probe into bias and prejudice against the applicable law are permissible. TEX. CODE CRIM. PROC. ANN. art. 35.16; *Hogue v. State*, 711 S.W.2d 9, 27 (Tex. Crim. App. 1986). Yet, the trial court may impose reasonable restrictions on voir dire examination. *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991) (citing *Faulder v. State*, 745 S.W.2d 327, 334 (Tex. Crim. App. 1987)).

An appellate court reviews the trial court's decision to limit jury selection under an abuse of discretion standard. *Dowden v. State*, 758 S.W.2d 264, 274 (Tex. Crim. App. 1988) (citing *Smith v. State*, 513 S.W.2d 823, 825 (Tex. Crim. App. 1974)). An abuse of discretion occurs when the trial court refuses to permit a party to ask a proper question. *Allridge v. State*, 762 S.W.2d 146, 163 (Tex. Crim. App. 1988). Likewise, permitting an improper question would also be an abuse of discretion. *Palacio v. State*, 580 S.W.3d 447, 450 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002)).

Here, the State asked the jury panel the following question:

13

And I'm going to ask each and every single one of you whether -- based on your prior experience with law enforcement, whether you strongly distrust all law enforcement, distrust, trust or strongly trust? And it's ultimately to give myself and Mr. Davis a gauge of where we're at on this. We've got to have 12 people that, regardless of prior experiences, are going to be open to hearing the evidence and making a fair and impartial decision.

In response to the State's question, Washington objected, stating,

I'm going to object to improper jury question. To give the jurors a level of trust to list in a specific scale -- I'm going to object to any jury question to prior communication with law enforcement have -- giving them a level of trust number or a strongly distrust, that's an improper question.

The trial court overruled Washington's objection. For the next several minutes, the State spoke to each panel member assessing their level of trust of law enforcement officers.

On appeal, Washington maintains "that the use of such a formulation during voir dire [was] simply the wolf of bias toward law enforcement dressed up under a sheep's pelt of an innocuous sounding term 'trust.'" In support of his position, Washington directs us to *Hernandez v. State*, 563 S.W.2d 947 (Tex. Crim. App. 1978). In *Hernandez*, the prospective juror stated his belief that a law enforcement officer would not *tell a lie* in *any* case. Three of the State's four witnesses were police officers. *Id.* at 950. Consequently, the prospective juror was biased as a matter of law in that she was effectively prevented "from impartially judging the credibility of those witnesses." *Id.* When a potential juror indicates that he or she would always believe a police officer, the potential juror is expressing a bias against the defendant and should be struck for cause. *Id.*

Contrary to his argument, Washington cites legal authority that stands for the proposition that questions regarding a potential juror's bias in favor of, or against, law enforcement officers

14

are permissible inquiries. The same could be said for questions relating to the panel members' level of trust toward police officers or correctional officers, especially when, as in this case, the State is relying on the officers' testimony to prove its case. Such an inquiry, and those similar to it, give *both parties* the opportunity to determine whether any panel member would believe or disbelieve one person over another merely because of a particular job title or employment experience. Far from assisting only the State, the panel members' answers to the complained-of question also provided Washington with useful information. In sum, the question Washington complains of is an acceptable one; it is the panel members' answers to the question that might possibly result in an objection in the form of a challenge for cause.[10]

We overrule Washington's fourth point of error.

### D.     Washington's Previously Dismissed Criminal Charges

In his fifth point of error, Washington contends that the trial court reversibly erred when it refused to admit evidence showing that the charges for which he was incarcerated had been dismissed by the State. To that end, Washington sought the admission of the evidence several times during the guilt/innocence phase of the trial and once during the punishment phase. Washington argues that the jury should have had the "complete story," including the fact that the State dismissed the charges against him.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd)

---

[10]A tendency to believe or disbelieve the testimony of a police officer more than other witnesses may be sufficient to justify the trial court in excusing the potential juror for cause but does not *require* the juror to be excused for cause. *Leach v. State*, 770 S.W.2d 903, 907 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd).

(citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)).  "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'"  *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).  "We may not substitute our own decision for that of the trial court."  *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).  If the trial court's ruling was in the "zone of reasonable disagreement," there is no abuse of discretion, and its ruling will be upheld. *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996).

In response to Washington's argument, the State maintains that the evidence was inadmissible because it was, among other things, irrelevant.  Rule 402 of the Texas Rules of Evidence provides that all relevant evidence is admissible.  TEX. R. EVID. 402.  Rule 401 defines relevant evidence as that having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  TEX. R. EVID. 401.  "In deciding whether a particular piece of evidence is relevant, the trial judge should ask 'would a reasonable person, with some experience in the real world believe that the particular piece of evidence is helpful in determining the truth or falsity of any fact that is of consequence to the lawsuit.'"  *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) (op. on reh'g) (quoting *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976)).

In support of his position, Washington directs us to Rule 107 of the Texas Rules of Evidence, entitled the "Rule of Optional Completeness."  Rule 107 states,

> If a party introduces part of an act, declaration, conversation, writing, or recorded
> statement, an adverse party may inquire into any other part on the same subject.

> An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.

TEX. R. EVID. 107. Washington contends that the jury should have heard the "complete" story. His argument is less than compelling.

Washington was charged with two counts of assault on a public servant. Consequently, the State was required to prove (1) that Washington intentionally, knowingly, or recklessly caused bodily injury to another and (2) that he committed the offense against a person he knew was a public servant lawfully discharging an official duty. TEX. PENAL CODE ANN. § 22.01(b) (Supp.). Washington does not argue that the State's evidence was insufficient to prove that he was guilty of the charge. Instead, he seemingly claims that he had a reasonable explanation as to why he committed the assaults and that the jury should have been allowed to consider his explanation.

According to Washington, "the evidence of the reasons for his incarceration were part and parcel of the context of this prosecution, trial, conviction, and punishment" because "[t]his was not an assault on a peace officer that occurred out in the woods or at a shopping center or in relation to a DWI stop or domestic violence." Apparently, Washington argues that under those types of circumstances, charging a person with assault on a public servant would be more palatable. Washington also justifies his actions, stating, "Any citizen lawfully going about his or her business yet thrown into jail understandably would be upset and even acting belligerent to the forces of the State that kept them there." In other words, if Washington had *really* committed the crime for which he was being held, he would have had no defense or excuse for committing

17

the assaults on the correctional officers. But because the State dismissed the original charges, he was somehow less responsible for intentionally, knowingly, or recklessly causing bodily injury to the correctional officers.

The fact that the original charges were dismissed has no relevance to the elements of the charged offense. In other words, evidence regarding the disposition of the offenses for which he was being held was not "necessary to explain or allow the trier of fact to fully understand the part offered by the [State]." *See* Tex. R. Evid. 107. As a result, we find that the trial court's ruling was within the zone of reasonable disagreement and that the trial court did not abuse its discretion.

We overrule Washington's fifth point of error.

## III.    Conclusion

We affirm the judgment of the trial court.


Scott E. Stevens
Justice

Date Submitted:        December 13, 2021
Date Decided:          January 27, 2022

Do Not Publish