**Affirmed and Opinion Filed December 5, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00242-CR**

**JAMES WALLACE JAYROE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-22-0361**

# MEMORANDUM OPINION

Before Justices Reichek, Carlyle, and Miskel
Opinion by Justice Miskel

A jury convicted appellant, James Wallace Jayroe, of two counts of indecency with a child by sexual contact and returned sentences of 16 years and 18 years of imprisonment, respectively. Appellant appeals the trial court's judgment, bringing three issues, all of which relate to voir dire: (1) the denial of a challenge for cause of a venire member, (2) ineffective assistance of appellant's counsel, and (3) alleged fundamental error based on statements by the State's counsel. We affirm.

## I. Factual and Procedural Background

The complainant, J.I., was seventeen years-old at the time of trial. Previously, when she was approximately seven or eight years old, J.I. and her family resided in an apartment attached to her father's truck repair shop. Appellant was a friend of her father's and was often at the shop. J.I. testified at trial that when she came home from school, she would often go into her father's office inside the repair shop and play on the computer while sitting in appellant's lap. She testified about two occasions when appellant touched her clitoris with his hand while she was seated in his lap playing on the computer.

Several years later, when J.I. was a teenager, she became friends through TikTok with another teenager. J.I. testified that this other teen encouraged J.I. to report what appellant had done to her. J.I. then told her mother, who also told J.I.'s father. J.I.'s father reported these incidents to law enforcement.

The State charged appellant with two counts of indecency with a child by sexual contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). At the conclusion of appellant's trial for these offenses, the jury convicted appellant of both counts and assessed his punishment at 16 years' confinement for the first count and 18 years' confinement for the second count. On February 23, 2023, the trial court rendered judgment of conviction on these verdicts, ordering that the sentences run concurrently. Appellant appealed the trial court's judgment.

On March 9, 2023, the trial court signed an amended judgment of conviction. The changes in the amended judgment are not at issue in this appeal, but the amended judgment superseded the original judgment as the operative judgment in this case. Around this same time, appellant designated a new lead counsel to handle the appeal. On March 24, 2023, appellant's new counsel filed a motion for new trial in the trial court, on the basis that "the verdict is contrary to the law and the evidence." This motion was overruled by operation of law.

## II.     Denial of the Challenge For Cause

Appellant's first issue contends that the trial court reversibly erred during voir dire by overruling appellant's motion to strike Venire Member No. 6 for cause. The State responds that appellant did not preserve error regarding the trial court's ruling, and, even if appellant had preserved error, the trial court did not abuse its discretion in overruling appellant's motion to strike.

In response to counsel's questions, Venire Member No. 6 disclosed that one of his relatives had confided in him within the last couple of years that such relative had been abused when he was younger. Venire Member No. 6 also equivocated about whether he could consider the minimum punishment, whether he could be fair and impartial, or whether he had a bias and prejudice for the State. At the conclusion of voir dire, the trial court met with counsel outside the presence of the venire to discuss challenges for cause and peremptory strikes. The trial court excused several venire members based on agreed challenges for cause. The trial court then turned to

–3–

appellant's challenge for cause to Venire Member No. 6, to which the State did not agree. The court brought Venire Member No. 6 back into the courtroom for further questioning and then denied appellant's motion to strike the venire member for cause. Appellant's counsel exercised a peremptory strike against Venire Member No. 6, and he also used all his peremptory strikes. The trial court then impaneled the jury.

## A. Applicable Law

Error in denying a challenge for cause is preserved for review only if appellant (1) used all his peremptory strikes, (2) asked for and was refused additional peremptory strikes, and (3) was then forced to take an identified objectionable juror whom appellant would not otherwise have accepted had the trial court granted his challenge for cause (or granted him additional peremptory strikes so that he might strike the juror). *Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016); *Chambers v. State*, 866 S.W.2d 9, 23 (Tex. Crim. App. 1993).

Further, to establish reversible error, an appellant must demonstrate harm. *See Chambers*, 866 S.W.2d at 23. Even if a court errs in overruling a challenge for cause, an appellant must show that he was harmed because he was forced to use a peremptory strike to remove the venire person and that he suffered a detriment from the loss of that peremptory strike. *Buntion*, 482 S.W.3d at 83; *Chambers*, 866 S.W.2d at 22. "When the trial judge denies a valid challenge for cause, forcing the defendant to use a peremptory strike on a panel member who should have been

removed, the defendant is harmed if he would have used that peremptory strike on another objectionable juror." *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex. Crim. App. 2014).

**B.      Appellant Failed to Preserve Error or Show Harm.**

Appellant's counsel used all his peremptory strikes, and he used one of these strikes on Venire Member No. 6 after the trial court denied counsel's motion to strike this venire member for cause. However, appellant's counsel did not ask the trial court for an additional peremptory strike for Venire Member No. 6. Nor did counsel identify for the trial court any other objectionable juror that he would have struck had the judge granted his challenge for cause or granted his request for an additional peremptory strike. Accordingly, appellant failed to preserve this issue for our review, and he has not shown harm from the trial court's refusal to grant his motion to strike Venire Member No. 6. *See Buntion*, 482 S.W.3d at 83.

We overrule appellant's first issue.

**III.      Ineffective Assistance of Counsel**

Appellant's second issue asserts that his trial counsel was ineffective for failing to request an additional peremptory strike after the trial court denied his request to strike Venire Member No. 6. The State responds that appellant has not met his burden to prove that his counsel was ineffective.

## A.    Applicable Law

The defendant bears the burden of proving an ineffective assistance of counsel claim by a preponderance of the evidence.  *Young v. State*, 991 S.W.2d 835, 837 (Tex. Crim. App. 1999).  To prevail, the defendant must show that (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *see also Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).  The defendant must prove both prongs of the test.  *Lopez*, 343 S.W.3d at 142. The deficient performance must be affirmatively demonstrated on the record and not require retrospective speculation.  *Id*.  When reviewing claims of ineffective assistance, "there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689).  "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."  *Id*.

A lawyer's "[d]ecisions relating to challenging prospective jurors for cause or striking prospective jurors are strategic and tactical."  *Hebert v. State*, 489 S.W.3d 15, 23 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also State v. Morales*, 253 S.W.3d 686, 698–99 (Tex. Crim. App. 2008) ("Even if it is appropriate to regard [the venire person] as impliedly biased under the Sixth Amendment, that does not

–6–

*ipso facto* establish that trial counsel could not make a legitimate tactical decision to keep her on the appellant's jury."); *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (per curiam) (noting that trial counsel's "[w]aiver of his client's right to insist that every juror in the case be in all things fair and impartial may in counsel's best professional judgment have been an acceptable gamble.").

Trial counsel should generally be permitted to explain his actions before being found ineffective. *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (internal citation and quotation marks omitted); *see also Ex parte Saenz*, 491 S.W.3d 819, 828 (Tex. Crim. App. 2016) (noting that, in absence of *evidence* of trial counsel's reasons for challenged conduct, "an appellate court commonly will assume a strategic motivation if any can possibly be imagined") (internal citation and quotation marks omitted); *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (noting that direct appeal is usually an inadequate vehicle for raising a claim of ineffective assistance because the record is generally underdeveloped). A silent record that does not explain counsel's actions will not overcome the strong presumption of reasonable assistance. *Johnson*, 624 S.W.3d at 586. Therefore, "if the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Id.*

–7–

**B. Appellant Did Not Meet His Burden to Prove Ineffective Assistance of Counsel.**

The record does not show why appellant's trial counsel did not request an additional peremptory strike after the trial court denied such counsel's request to strike Venire Member No. 6. However, appellant contends there is "no conceivable reasonable explanation" as to why his trial counsel did not request an additional peremptory strike to use against R.P., another venire member who subsequently made it onto the jury. In response to questions from appellant's trial counsel during voir dire, R.P. stated that her husband, as well as some of her friends, were abused as children, and she had also been abused as an adult. R.P. described how these experiences would impact her as a juror:

> [DEFENSE COUNSEL]: . . . [I]s that going to affect your ability to be fair and impartial in this case based upon a couple of different circumstances?
>
> VENIREPERSON: I think I can be fair.
>
> [DEFENSE COUNSEL]: What about the impartial part?
>
> VENIREPERSON: I'm not sure about the impartial.
>
> [DEFENSE COUNSEL]: Would you have a – coming in here, would you have a bias or prejudice towards the State or against the defense, being a victim yourself?
>
> VENIREPERSON: Possibly.
>
> [DEFENSE COUNSEL]: Okay. And would that -- do you believe that would affect your ability to sit as a juror in this case?

VENIREPERSON: No. But, I mean, if the person is assumed -- or convicted, then I would base my scale on the higher end of the spectrum.

[DEFENSE COUNSEL]: Could you follow the punishment range?

VENIREPERSON: Yes.

[DEFENSE COUNSEL]: Okay. So if you felt like it was appropriate, you could consider as low as 2 or as high as 20?

VENIREPERSON: I can.

[DEFENSE COUNSEL]: Okay. If you change your mind, will you let me know?

VENIREPERSON: (Nods.)

[DEFENSE COUNSEL]: If you think there's something we need to know, will you let me know?

VENIREPERSON: I will let you know.

In the absence of evidence regarding why appellant's trial counsel did not request an additional peremptory strike to use on R.P., we presume that such counsel's representation of appellant was not deficient. *See Johnson*, 624 S.W.3d at 586; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) ("Due to the lack of evidence in the record concerning trial counsel's reasons for not challenging or striking venire member Supinski, we are unable to conclude that appellant's trial counsel's performance was deficient."). Although R.P. responded that she might be biased against the defense, she followed up by stating that she could follow the

punishment range. On this record, appellant did not overcome *Strickland*'s strong presumption of reasonable assistance. *See* 466 U.S. at 689; *Johnson*, 624 S.W.3d at 586; *Thompson*, 9 S.W.3d at 813.

We overrule appellant' second issue.

## IV. Fundamental Error

Appellant's third issue contends that we must reverse this case and remand it for a new trial because counsel for the State committed fundamental error during voir dire, which affected appellant's substantial rights. During voir dire, the State questioned the venire about the delayed outcry of a child victim. Appellant claims that the following questions and statements by the State's counsel included fundamental error:

> [STATE'S COUNSEL]: So we have fear. We have shame and guilt. We have not knowing what's going to happen or fearing that you are not being believed or maybe actually not being believed.
>
> Does anyone else have anything else to add? We have -- is it Mr. D*****? What would you add?
>
> VENIREPERSON: You know, you kind of touched on it a little, but, you know, if it's someone in the family or close to the family, then the ramifications of telling, you know, what happens to the family, right?
>
> [STATE'S COUNSEL]: Yeah.
>
> VENIREPERSON: So what follows, the fear of that, could be a pretty strong factor in delaying.
>
> [STATE'S COUNSEL]: And, Mr. D*****, you make a really important point about the connection to the family.

So in these type of cases, child sexual abuse, who do you think the offender most often is? Somebody known to the family or is it stranger danger?

VENIREPERSONS: No.

[STATE'S COUNSEL]: Okay. Is there any – you know, mostly what we see on the news is the stranger danger. That's what gets clicks on the Internet and gets eyeballs on TVs. But statistically that's really rare.

Mr. P********, what -- or, Mr. D*****, sorry. What do you think the percentage -- if you had to just guess a percentage of known offenders to the victim, what do you think?

VENIREPERSON: It's probably really high. I would say over 90 percent.

[STATE'S COUNSEL]: Is there anybody who is surprised by that? I see lots of heads shaking affirmatively that that's kind of what you know.

So all of you who raised your hand earlier about knowing somebody who outcried to sex abuse, raise your hand if that person outcried and it was a stranger. We have one, Mr. T*******. We have another one, Ms. P***, D**** P***.

So of all those hands up, we get two hands for what might be described as a stranger, and so I think just anecdotally, Mr. D*****, that is consistent with your estimate of over 90 percent.

And so let's talk about, you know, what does a child molester look like? So if it's people that are known to the family, do they have a look? Mister -- I want to say your last name correctly. How do you say it?

VENIREPERSON: K********.

[STATE'S COUNSEL]: K********. Mr. K********, is there a sex offender look?

VENIREPERSON: It could be anyone.

[STATE'S COUNSEL]: Yeah. It can be really helpful if there is that look, but most often these are -- you know, these are known people to the family, family, friends, uncles, stepparents, parents. And so you are not going to see that look.

Is there anybody that is surprised by that who is thinking more, you know, van down by the river with free candy on it? That's stereotypical, but that's just not what we see. Has anyone heard the term grooming before in this context?

Appellant argues that the State improperly assumed the role of an expert witness in voir dire by instructing the venire members that the perpetrator in child sex abuse cases is usually well known to the victim. Appellant also contends that the prosecutor's statements amounted to improper commitment questions that "effectively commit[ed] the venire members to a guilty verdict once the[y] heard that the accused was not a stranger to the complainant." Appellant urges that the above comments "rose to such a level as to bear on the presumption of [appellant's] innocence or vitiate the impartiality of the jury."

## A. Applicable Law

Ordinarily, to preserve an error for appellate review, the complaining party must make "a timely, request, objection, or motion." *See* TEX. R. APP. P. 33.1(a)(1). Appellant acknowledges that his trial counsel did not object to the above questions

and statements. However, he argues that the State's comments amounted to "fundamental error" that can be raised for the first time on appeal.

Questions of "fundamental error" are considered within the framework of the Texas Court of Criminal Appeals' decision in *Marin v. State*. *See* 851 S.W.2d 275, 279 (Tex.Cr.App.1993).[1] Under *Marin*, the Texas adjudicatory criminal system contains three types of error-preservation rules: (1) absolute requirements and prohibitions, (2) rights of litigants that must be implemented unless expressly waived, and (3) rights of litigants that are to be implemented upon request. *Id.* at 279; *see also Cruz v. State*, 698 S.W.3d 265, 268 (Tex. Crim. App. 2024); *Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. Ap. 2017). These separate classifications are also referred to as category one, -two, and -three *Marin* rights, respectively. *Proenza*, 541 S.W.3d at 792. Category three rights are the most common, *see Cruz*, 698 S.W.3d at 268, and they are forfeited unless preserved through an objection. *See Proenza*, 541 S.W.3d at 796.

## B.    The State's Comments Were Not "Fundamental Error."

Appellant cites *Jasper v. State* to support his argument that the prosecutor's comments in this case rose to the level of fundamental error. *See* 61 S.W.3d 413, 421 (Tex. Crim. App. 2001*)*. In *Jasper*, the Court of Criminal Appeals noted that it had the power to "take notice of fundamental errors affecting substantial rights

---

[1] *Overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997), *and abrogated on other grounds by Matchett v. State*, 941 S.W.2d 922, 928 (Tex. Crim. App. 1996) (plurality op.).

although they were not presented to the court." *Id.* at 420. However, the Court of Criminal Appeals subsequently clarified that its decision in *Jasper* did not establish a freestanding doctrine of "fundamental error." *See Proenza*, 541 S.W.3d at 794–97. The Court declined to divine a freestanding, harm-based exception to the rules of error preservation established in *Marin*. *See id.* at 795. Instead, the fundamental errors described in *Jasper* were simply category-one and -two *Marin* errors. *Id.*[2] We conclude that the State's comments in the present case were not fundamental, category-one or -two *Marin* errors, and thus appellant failed to preserve his complaint by not objecting in the trial court.

### 1. Complaints about the State's comments were forfeited under *Marin* category three.

Appellant cites no case authority, nor have we found any, holding that a prosecutor commits a *Marin* category-one or -two fundamental error in a child sex abuse case by commenting to the jury panel during voir dire that the offender is usually known by the victim's family. Absent such authority, we view this comment to be akin to jury argument. *Cf. Davis v. State*, No. 05-19-00508-CR, 2020 WL

---

[2] Some decisions by this Court have used a harm-based analysis for determining whether a prosecutor's statements made during voir dire were fundamental error. *E.g., Holland v. State*, No. 05-18-01419-CR, 2019 WL 6799755, at *4 (Tex. App.—Dallas Dec. 13, 2019, pet. ref'd) (mem. op.) (not designated for publication) ("Here, other actions by the prosecutor mitigated any harm the statement might have brought to the presumption of innocence."); *Avula v. State*, No. 05-13-00405-CR, 2015 WL 3429674, at *5 (Tex. App.—Dallas Jan. 30, 2015, no pet.) (not designated for publication) ("The prosecutor's comment did not rise 'to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury.' (citing *Jasper*, 61 S.W.3d at 421)). As discussed previously, the above harm-based analysis is contrary to *Proenza*, which declined to read *Jasper* to divine a freestanding, harm-based exception to the rules of error preservation established in *Marin*. *See Proenza*, 541 S.W.3d at 795; *see also Robinson v. State*, 685 S.W.3d 217, 222 n.5 (Tex. App.—Fort Worth 2024, no pet.) (based on *Proenza*, disagreeing with our harm-based fundamental error analysis in *Holland*).

3396440, at *5 (Tex. App.—Dallas June 19, 2020, no pet.) (memo. op.) (not designated for publication) ("[I]f the prosecutor in this case misstated the law during voir dire, then we view those statements to be akin to an improper jury argument, which is forfeited if it is not preserved with an objection."). Appellant forfeited any complaints to such argument by not objecting. *See Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018) ("The right to a trial untainted by improper jury argument is forfeitable."); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) ("[D]efendant's 'right' not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it." (citing *Marin*, 851 S.W.2d at 279)).

In other words, under the *Marin* framework, the State's comments in this case, even if erroneous, were a category three error. *See Proenza*, 541 S.W.3d at 792; *Marin*, 851 S.W.2d at 279. Accordingly, appellant forfeited any complaint regarding these comments by failing to object in the trial court. *See Proenza*, 541 S.W.3d at 792; *Marin*, 851 S.W.2d at 279.

**2.** **Complaints about the State's purported commitment questions were forfeited under *Marin* category three.**

Appellant also contends the State's comments to the jury panel were "effectively the same as improper commitment questions." Commitment questions "commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Lydia v. State*, 109 S.W.3d 495, 498 (Tex. Crim. App. 2003) (internal citation and internal quotation marks omitted).

–15–

Commitment questions are improper when (1) the law does not require a commitment or (2) the question adds facts beyond those necessary to establish a challenge for cause. *Id.* "[I]n criminal cases, questions that are not intended to discover bias against the law or prejudice for or against the defendant, but rather seek only to determine how jurors would respond to the anticipated evidence and commit them to a specific verdict based on that evidence, are not proper." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

Appellant argues the State's comments to the jury panel—that the offender in a child abuse case is usually known by the victim's family—"effectively committ[ed] the venire members to a guilty verdict once the[y] heard that the accused was not a stranger to the complainant." We interpret appellant to argue that the State, in effect, asked the jury panel whether, assuming the defendant was known to the victim's family, the panel would find the defendant guilty. Even if the State's comments amounted to improper commitment questions, a party must object to an improper commitment question to preserve his complaint for appellate review. *See Halprin v. State*, 170 S.W.3d 111, 119 (Tex. Crim. App. 2005), *habeas corpus granted on other grounds by Ex parte Halprin*, No. WR-77,175-05, 2024 WL 4702377 (Tex. Crim. App. Nov. 6, 2024); *Phillips v. State*, No. 05-08-01654-CR, 2010 WL 297942, at *1 (Tex. App.—Dallas Jan. 27, 2010, pet. ref'd) (not designated for publication). Appellant cites no case authority (nor have we found we find any) in which an improper commitment question was held to be a fundamental, *Marin*

category-one or -two error. *See Proenza*, 541 S.W.3d at 792, 795; *Marin*, 851 S.W.2d at 279. Accordingly, we conclude that appellant forfeited any complaint regarding the State's questions by failing to object to them in the trial court.

We overrule appellant's third issue.

## V.      Conclusion

We affirm the trial court's amended judgment of conviction.

230242f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Emily Miskel/

EMILY A. MISKEL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES WALLACE JAYROE,
Appellant

No. 05-23-00242-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 439th Judicial
District Court, Rockwall County,
Texas
Trial Court Cause No. 2-22-0361.
Opinion delivered by Justice Miskel.
Justices Reichek and Carlyle
participating.

Based on the Court's opinion of this date, the amended judgment of
conviction of the trial court, dated March 9, 2023, is **AFFIRMED**.

Judgment entered this 5th day of December, 2024.